**In re NEW YORK, N. H. & H. R. CO.**
**No. 16562.**

District Court, D. Connecticut.

June 3, 1942.

238

See, also, 46 F.Supp. 214.

Hermon J. Wells and J. H. Gardner, Jr., both of New Haven, Conn., for trustees of New York, New Haven & Hartford R. Co.

Davies, Auerbach, Cornell & Hardy, of New York City (H. C. McCollom and Herbert A. Heerwagen, both of New York City, of counsel), and Marsh, Stoddard & Day, of Bridgeport, Conn. (Arthur M. Marsh, of Bridgeport, Conn., of counsel), for Irving Trust Co., as trustee under Collateral Trust Indenture.

. Claude E. Hamilton, Jr., C. M. Clay, and Florence de Haas Dembitz, all of Washington, D. C., and Cummings & Lockwood, of Stamford, Conn., for Reconstruction Finance Corporation.

Daniel W. Knowlton and Daniel H. Kunkel, both of Washington, D. C., for Interstate Commerce Commission.

Fred N. Oliver and Willard P. Scott, both of New York City, for Mutual Savings Bank Group.

White & Case, of New York City (Fitzhugh McGrew and Herbert F. July, both of New York City, of counsel), and Wiggin & Dana, of New Haven, Conn. (Frederick H. Wiggin and Stewart H. Jones, both of New Haven, Conn., of counsel), for Bankers Trust Co., as trustee under First and Refunding Mortgage.

HINCKS, District Judge.

These petitions are brought each by an indenture trustee, No. 492 by Bankers Trust Company as trustee under the First and Refunding Mortgage and No. 611 by Irving Trust Company as trustee under a Collateral Trust Indenture, asking the Court without reference to or restriction by any maximum allowances set by the Interstate Commerce Commission in these proceedings to adjudicate the amounts on account of the services and expenses of the respective petitioners and their counsel in these proceedings; to decree that the allowances thus established constitute under the provisions of the respective indentures prior liens in favor of the petitioners upon the respective mortgaged properties, or upon securities to be issued to the bondholders secured thereby; and to enforce said liens.

The matter is before the Court upon motions to dismiss these petitions filed and pressed by the Interstate Commerce Commission through its counsel, by the New Haven Trustees, and by Reconstruction Finance Corp., a collateral noteholder in these proceedings. The petitions have also been opposed by brief in behalf of the Mutual Savings Bank Group.

I. I hold that the services rendered and expenses incurred by the petitioners and their attorneys are covered by the liens of the respective mortgage indentures in so far as said services were reasonably necessary and adapted (a) to protect and advance in these proceedings the interests of the underlying bondholders, (b) to advance the achievement of reorganization, and (c) to protect the mortgage trustee from personal liabilities for which under the mortgage it has a right of indemnity against the debtor's estate.

I cannot accept the view that the petitioners were acting as mere volunteers in the premises. They were acting at least in substantial part under the contract of the trust indenture whereby they were expressly entitled to "reasonable compensation" and to "reimbursement of reasonable expenses, including counsel fees" for all services rendered "in the execution of the trusts hereby created." The indenture was drawn long prior to the enactment of Section 77. It provided that in case of default the petitioner, as also bondholders, might enter upon and operate the mortgaged property for the benefit of all bondholders; also that the petitioner might foreclose the mortgage and obtain a receiver.

I think no one will dispute that the petitioners would have been remiss in their proper discharge of their trusts if in an equity receivership they had left their cestuis without representation or after default had failed to take appropriate action for their protection. Certainly this equitable obligation was not precisely to be measured by their possible liability in an action at law for non-feasance. I find nothing in Section 77 which exonerates mortgage trustees from their equitable obligation to take action appropriate to the same objective. Such a view, indeed, seems repugnant to Congressional policy as declared in the Trust Indenture Act of 1939. See 15 U.S.C.A. §§ 77bbb and 77ooo(c).

To be sure, the Bankruptcy Act substitutes statutory remedies for the remedies incident to an equity receivership: to the extent that the new remedies vary from the old the course of activity by a mortgage trustee and much of the incidental—but inescapable—detail requires adaptation to that change. But this change did not extinguish any rights or obligations growing out of the mortgage indenture nor transform the status of the petitioners from that of responsible trustees to that of volunteers. And the activities reasonably required for their own protection and for the protection of their bondholders under the exigencies of reorganization under Section 77, as indeed also services contributing to the achievement of reorganization, fell within the lien of the mortgage contracts. Cf. Straus v. Baker Co., 5 Cir., 87 F.2d 401, at page 408.

I notice that the Commission has made a distinction between "regular and routine services performed in administering the trust, ordinarily covered by an annual maintenance fee" and other "special" services performed in the reorganization proceedings. This distinction seems to me entirely valid. Such routine services cannot constitute allowances in the reorganization proceedings and are not subject to the jurisdiction of the Commission, because they are not "incurred in connection with the proceedings and plan", as specified under section 77, subdivision c(12), 11 U.S.C.A. § 205, sub. c(12). Nevertheless, both the routine services and the services in the reorganization proceedings may be covered by the lien of the mortgage indenture.

II. I hold that all compensable services and expenses of the petitioners which were incurred in connection with the proceedings and plan fall within the provisions of Section 77(c) (12).

Just as Section 77 provides a technique of reorganization which does not require the enforcement of mortgage liens, so it contemplates by subdivision c(12) a technique for the liquidation and discharge of contractual claims for services which obviates the necessity of the foreclosure of the covering liens. And the fact that the services and expenses of these petitioners happen to be the subject matter of contract liens no more excludes their allowance from the effect of sub. c(12) than the existence of outstanding mort-

gages operates to immunize the bondholders secured thereby from the other provisions of the Act which contemplate that their claims may be discharged by the substitution of securities of equivalent value under a plan which satisfies the requirements of the Act. The petitioners' contract provided that they should receive reasonable compensation and reimbursement. The same standard of liquidation is prescribed by Section 77. Only the method and the forum for accomplishing the liquidation is changed.

The language of sub. c(12) specifies a single method which shall apply to all parties alike. That Congress indeed intended that subdivision c(12) should apply to Indenture Trustees who might happen to have a lien, as well as to other parties in interest and committees who were without a lien, abundantly appears from the legislative history of the Act. There is thus no occasion for the modification of the inclusive language of sub. c(12) by the process of construction.

[9] And certainly the construction advanced by the petitioners is inadmissible. They point to the language of sub. c(12) under which the court may order the allowances thereby authorized to be paid "out of the debtor's estate". I agree that this language is broad enough to authorize in a proper case payment from the free (unmortgaged) assets of the estate. In this respect, perhaps the Act goes further than the equitable rule whereby allowances for services in behalf of mortgaged property might be charged against the mortgaged assets. But I cannot agree that the scope of sub. c(12) is limited to such allowances as may only be charged against the general (unmortgaged) estate. The language used, viz., "the debtor's estate", is broad enough to include the mortgaged assets as well as the free assets. And if the enforcement provisions of sub. c(12) are entitled to this broad construction, as I hold, there is no room left for the argument that the liquidation provisions of sub. c(12) with the accompanying grant of jurisdiction to the Commission must by a narrower process of construction be confined to services not covered by lien.

III. Nor is the Act, thus construed, unconstitutional.

The petitioners' liens are not impaired. Like the liens of all the mortgagees and pledgees in these proceedings, the remedy only is suspended. If these proceedings shall be dismissed, the lien forthwith becomes enforceable with all its pristine vigor. Such a suspension of the remedy is not inconsistent with the Constitution. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island Ry., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110. Cf. Wright v. Union Central Life Ins. Co., 311 U.S. 273, at page 279, 61 S.Ct. 196, 85 L.Ed. 184.

The petitioners further complain that under the Act, as I have construed it, they are deprived of all right to judicial review of a decision by the Commission which seems to liquidate, at least in one dimension, their contractual right to compensation. This complaint is unfounded.

For under section 77, subdivision e(2), the Judge may approve a plan only if "satisfied" that all allowances "for expenses and fees incident to the reorganization * * * are within such maximum limits as are fixed by the Commission" and are "reasonable". Thus the petitioners' liens can be extinguished through a discharge of their claims in these proceedings only if the maxima set by the Commission are such that the allowances made thereunder by the Judge are found by the Judge to be reasonable.

And if the Judge shall not be satisfied that such maxima permit of allowances which are reasonable, under the Act the Judge may return the petition for reconsideration by the Commission. Such is the view of the parties opposing petitions 492 and 611, including counsel for the Commission. The power of a Judge so to return a petition must be recognized unless Congress intended that a Judge should certify an allowance as "reasonable" although convinced that it was inadequate. Such a law would stultify both author and agent. Moreover, the restriction of allowances to inadequate dimensions would tend to nullify the policy of the Act to encourage responsible creditor and class participation in reorganizations. This policy, in a sense, is paramount to the policy of economy in administration; were it otherwise the Act would have prohibited all allowance of compensation to the parties from the estate. But plainly Congress did not want costless reorganizations rather than just reorganizations. It follows that the true policy relating to economy is one adapted to preclude

excessive expense—not to enforce inadequate compensation. Thus understood, the policy collides not at all with that of encouraging useful and responsible creditor representation by the allowance of adequate compensation through which that objective can be achieved.

This view is also completely in harmony with the underlying scheme of the Act. For the Act charges the Commission with the responsibility of determining values and of formulating plans. Yet the plans thus reported can be approved by the Judge only if he is satisfied that they are fair; if not thus satisfied, unless he dismisses the proceedings, he can only return the plan to the Commission for further consideration. And so as to a maximum allowance set by the Commission. The Judge can approve the plan only if satisfied that all allowances are within the maxima set by the Commission and are reasonable; failing that, he can only dismiss the proceedings or "refer the proceedings back to the Commission for further action", subdivision e, second paragraph. Surely under this provision if the Judge's disapproval were limited to the maxima set by the Commission upon specified petitions for allowances, he need not refer back the substantial provisions of a reported plan: a re-reference of those specified petitions would suffice, accompanied by his "opinion stating his conclusions and the reasons therefor."

To be sure, this seems a cumbersome procedure for the liquidation of an allowance. Indeed, theoretically at least, the procedure may produce a deadlock between the Commission and the Judge which may ultimately block a reorganization. Yet from a practical standpoint, as Congress apparently perceived, in almost every case in which reorganization is indeed feasible a considered exchange of views between the Commission and the Judge will result in a final agreement purged of inadvertence and extravagance which shall permit of a fair appraisal of services under the particular eye of the Commission and services relating principally to activities before the Judge. Anyhow, Congress deemed it wise to condition the privilege of reorganization upon such an agreement. And if ever a case shall arise resulting in a final deadlock instead of agreement, perhaps the disagreement can be solved by an appeal from the Judge's order disapproving the reasonableness of a reconsidered maximum set by the Commission. However that may be, the petitioners here cannot justly complain that their rights have been insulated from judicial review when judicial sanction is required for the liquidation and discharge of their claims in the bankruptcy proceedings and in the event that the bankruptcy proceedings are dismissed their claims and covering liens are left unimpaired for adjudication elsewhere.

Thus any question as to the validity of an exclusive grant of jurisdiction to the Commission to fix, or even limit, allowances is not involved under the Act. And there is no basis for the constitutional objection which the petitioners invoke.

On these conclusions, the motions to dismiss petitions 492 and 611 must be granted, for these petitions are neither appropriate nor necessary to raise in issue in these proceedings the reasonableness of the maxima allowed by the Commission. That issue was available to the petitioners at the hearing in this court upon their applications for allowances after the Commission had set maxima under Section 77, sub. c(12). On that record without any further expansion, it lay within the power of this Court in these proceedings either to order allowances within the limits of the maxima or to return the applications to the Commission for further action on the ground that the maxima did not permit of adequate compensation.

Nor can the bankruptcy court in these proceedings enforce the petitioners' liens. For the liens are suspended during these proceedings: they may be enforced only if these proceedings are dismissed.

An appropriate order may be submitted.