# RECONSTRUCTION FINANCE CORPORATION *v.* BANKERS TRUST CO., TRUSTEE.

Nos. 387–388.   Argued January 8, 1943.—Decided February 8, 1943.

*Mr. Paul A. Freund,* with whom *Solicitor General Fahy,* and *Mr. James L. Homire* and *Mrs. Florence de Haas Dembitz* were on the brief, for petitioner.

*Mr. Joseph M. Hartfield,* with whom *Messrs. Jesse E. Waid* and *Fitzhugh McGrew* were on the brief, for respondent.

Briefs of *amici curiae* were filed by *Solicitor General Fahy* and *Messrs. Daniel W. Knowlton* and *Daniel H. Kunkel* on behalf of the Interstate Commerce Commission; by *Messrs. Fred N. Oliver* and *Willard P. Scott* on behalf of the Mutual Savings Bank Group on New Haven Railroad Bonds; and by *Mr. Hermon J. Wells* on behalf of Howard S. Palmer et al., Trustees, urging reversal; by *Mr. H. C. McCollom* on behalf of the Irving Trust Co., urging affirmance; and by *Mr. Frank C. Nicodemus, Jr.,* on behalf of the Chicago, Milwaukee, St. Paul & Pacific Railroad Co. et al.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This controversy arises in a proceeding under § 77 of the Bankruptcy Act[1] for the reorganization of the St. Louis-San Francisco Railway Company system, part of which is the Kansas City, Fort Scott & Memphis Railway, under a mortgage of whose property the respondent Bank-

---

[1] March 3, 1933, c. 204, 47 Stat. 1474, as amended; 11 U. S. C. § 205.

ers Trust Company is trustee. The respondent obtained leave to intervene in the District Court and before the Interstate Commerce Commission,[2] and participated in the proceedings.

The Commission approved a plan of reorganization, and the District Court, with the plan before it, directed the filing of all petitions for allowance of "compensation for services rendered or for expenses (including reasonable attorneys' fees) incurred either under clause (12) of subsection (c) of Section 77 [3] . . . or otherwise . . ."

The respondent filed two such petitions, numbered respectively 266 and 267, each praying stated amounts as compensation for services as indenture trustee, for counsel fees, and for expenses. The sums named and the services recited in the two petitions were identical, but in 267 the compensation was claimed under § 77 (c) (12), and the right was reserved to object to the jurisdiction of the Commission. That petition was sent by the court to the Commission for the fixing of a maximum allowance. Prior to the Commission's action thereon, 266 came on for hearing by the court.

In 266 the respondent alleged that the services had "not been rendered or incurred 'in connection with the proceedings and plan' " for reorganization, but by respondent as trustee under the mortgage in performance of its fiduciary duties, for the benefit of the trust estate, as distinguished from the debtor's estate.

Over opposition by petitioner, a creditor and an intervenor, the court ruled that § 77(c)(12) did not apply, that the mortgage rendered the claim a proper charge on the mortgaged property, and directed the respondent to pay itself the amounts claimed out of cash deposited with it as indenture trustee.

---

[2] Pursuant to § 77 (c) (13); 11 U. S. C. § 205 (c) (13).

[3] 11 U. S. C. § 205 (c) (12).

The Commission held hearings on 267 and on other claims for allowances under § 77(c)(12). In a report it held that it had jurisdiction to fix a maximum amount to cover the items embraced in respondent's claim in 267, which it found were rendered in connection with the proceedings and the plan during the pendency of the § 77 proceeding.[4] It fixed maxima below the amounts claimed for the several items of service and expense.

The court refrained from passing on this portion of the Commission's report. The petitioner appealed from the order in 266, and the Circuit Court of Appeals affirmed the judgment.[5] Due to the importance of the questions raised in the administration of the statute and a conflict of decision,[6] we granted certiorari.

Section 77(c)(12), which appears in the margin,[7] em-

[4] St. Louis-San Francisco Ry. Co. Reorganization, 249 I. C. C. 195, 218.

[5] 129 F. 2d 122.

[6] *In re New York, N. H. & H. R. Co.*, 46 F. Supp. 236.

[7] "Within such maximum limits as are fixed by the Commission, the judge may make an allowance, to be paid out of the debtor's estate, for the actual and reasonable expenses (including reasonable attorney's fees) incurred in connection with the proceedings and plan by parties in interest and by reorganization managers and committees or other representatives of creditors and stockholders, and within such limits may make an allowance to be paid out of the debtor's estate for the actual and reasonable expenses incurred in connection with the proceedings and plan and reasonable compensation for services in connection therewith by trustees under indentures, depositaries and such assistants as the Commission with the approval of the judge may especially employ. Appeals from orders of the court fixing such allowances may be taken to the circuit court of appeals independently of other appeals in the proceeding and shall be heard summarily. The Commission shall, at such time or times as it may deem appropriate, after hearing, fix the maximum allowances which may be allowed by the court pursuant to the provisions of paragraph (12) of this subsection (c) and, after hearing if the Commission shall deem it necessary, the maximum compensation which may be allowed by the court pursuant to the provisions of paragraph (2) of this subsection (c)."

powers the Commission to fix a maximum allowance "out of the debtor's estate" for the expenses (including attorneys' fees) and services of "trustees under indentures," for expenses incurred and services rendered "in connection with the proceedings and plan." It emphasizes that the expenses, the fees, and the services must be "reasonable" and the allowance therefor "reasonable." The court is to make the allowance "within such maximum limits as are fixed by the Commission."

The questions presented are: (1) does the subsection apply to the respondent's claims, and (2) if it does, is it valid? We answer both in the affirmative.

*First.* The respondent contends that the expenses and services for which compensation was allowed were not those referred to in § 77 (c) (12). This, notwithstanding acquiescence in the holdings of the court below, which we think correct, that the term "debtor's estate" as used in the act embraces cash deposited with the indenture trustee and that the services and expenses in question were rendered and incurred "in connection with the proceedings and plan." [8]

The basis of the contention and of the decision below is that the services and expenses in question are "not within the meaning of" the subsection as the claim for their allowance is based upon the contract expressed in the mortgage [9] and is for services required by the mortgage

---

[8] None of the services were routine administrative services currently rendered by the trustee; none were of non-routine character rendered prior to the inception of the reorganization proceeding. If they had been of these descriptions the petitioner concedes allowance for them would be a matter for the court under § 77 (e), 11 U. S. C. 205 (e).

[9] Article Twenty-third of the Indenture: "The Trustees shall be entitled to reasonable compensation for all services rendered by them in the execution of the trusts hereby created, which compensation as well as all reasonable expenses necessarily incurred and actually disbursed hereunder, the Railway Company agrees to pay and hereby charges on the trust estate."

to be rendered the trust estate in fulfilment of the respondent's obligations.

The subsection applies in terms to allowance of claims such as those here in issue. No legislative history is cited to the contrary. The statute deals with other claims arising out of contract and secured by liens fixed or inchoate, and no basis is suggested for excluding the respondent's claim from its sweep.

*Second.* The main argument advanced in support of the judgment is that to apply § 77 (c) (12) to the respondent's claims would violate the Fifth Amendment of the Constitution, by depriving the courts of power to determine whether the Commission's decision was contrary to law or without evidence to support it; and by destroying respondent's vested property rights. In addition, it is urged that by Art. III, § 1, the judicial power of the United States is vested exclusively in the courts and matters of private right may not be relegated to administrative bodies for trial. The statute, fairly applied, in the circumstances disclosed by the record does not contravene any constitutional provision.

Three diverse conclusions respecting the effect of § 77 (c) (12) have been expressed by the courts. It has been held that the maximum fixed by the Commission is in all circumstances binding and unalterable.[10] The court below has concluded that the subsection has no application to the claims of an indenture trustee, secured by a lien on the trust estate pursuant to the mortgage contract. The District Court of Connecticut has decided that the

---

[10] *In re Chicago, M., St. P. & P. R. Co.,* 121 F. 2d 371; *In re Chicago & N. W. Ry. Co.,* 35 F. Supp. 230; *In re Chicago G. W. R. Co.,* 29 F. Supp. 149. It is suggested this view is sustained by the legislative history of the section. But the changes made by amendment in another section (77 (e)) are not helpful; and the testimony before the Judiciary Committee of the House is neither the sort of legislative material this court holds relevant to the construction of a statute, nor is it clear or definite upon the point at issue.

court may set aside the maximum named by the Commission, if found unreasonably low, and return the matter to the Commission for a fresh determination.[11]  The petitioner states its view that "while the statute is not entirely clear, judicial review of the maximum is permitted." After mentioning matters of law which are for the court's determination on review of the Commission's report, such as whether the services in question are to be compensated under the provisions of the Act, and others we need not mention, the petitioner refers to § 77 (e)[12] which provides that the judge shall approve the plan if satisfied, *inter alia*, that the "amounts to be paid . . . for expenses and fees incident to the reorganization . . . are reasonable, [and] are within such maximum limits as fixed by the Commission . . ." It is suggested that if the judge finds that any allowance within the maximum would be unreasonably low he may thereupon, under § 77 (e), disapprove the plan and either dismiss the proceeding or refer the cause back to the Commission for further action.

None of these views seems to us rightly to construe the statute.  We think the Congress did not intend to deny the courts all power of review of Commission action in such cases.  The statute plainly requires reference to the Commission of claims of the class under consideration, a hearing by that body, the setting of a maximum and action by the court on the footing of the Commission's report.  It does not contemplate a hearing *de novo* on the issue of the reasonable worth of the services rendered or the propriety of the expenses incurred, or a reappraisal by the court of the facts.  Moreover the procedure suggested by petitioner does not comport with the evident purpose of § 77 (c) (12) which appears to treat the court's action with respect to such claims as a matter distinct from his final action on the plan as a whole under § 77 (e).

---

[11] *In re New York, N. H. & H. R. Co., supra,* note 6.

[12] 11 U. S. C. 205 (e).

Our conclusion is that the function committed by the law to the Commission is the ordinary one reposed in a fact finding body and that its findings, supported by evidence, may not be disturbed by a court. This construction of the Act leaves the court free to decide upon the basis of the Commission's report all questions of law. With respect to the amount set as a maximum the only question of law which can arise is whether there is substantial evidence to support the Commission's finding. If there is not the court may so hold, set aside the finding and return the matter to the Commission. Under the terms of the subsection the judge's action upon the claim is subject to appeal independently of other issues, to the Circuit Court of Appeals.

Thus understood, we find no infirmity in the statute. The committal to the Commission of the fact finding office raises no substantial question under the Fifth Amendment. In actions at law a jury is the traditional trier of facts, whose function as such is preserved and guaranteed by the fundamental law. But courts of equity, of admiralty and of bankruptcy, by themselves and their mandatories examine and decide disputed questions of fact; and no reason is perceived why claims of the sort here involved should not be litigated, as are other claims against bankrupt estates, by such machinery and in such manner as Congress shall prescribe, saving to the claimant the right of notice and hearing, and such review as is provided by the statute as we construe it.

At law the jury's verdict settles issues of fact and defines rights, subject only to questions of law. In administrative procedure, the findings of the administrative body may likewise be made conclusive of fact issues, and equally define rights and duties subject only to questions of law. No question is made as to the competency of the Interstate Commerce Commission to appraise evidence and to draw an informed and intelligent conclusion as to what is a

maximum reasonable compensation for services rendered. Indeed, since most of the services are performed in connection with its activities it is probably in a better position to judge of their value to the reorganization than any court or other fact finding instrumentality.

To prescribe a method of trial of facts, subject to a court's supervision in matters of law, is not, as respondent suggests, to destroy vested rights, but to provide a method of appraising and liquidating them. The statute awards the claim priority of payment, so that respondent is not called upon, as are some other classes of creditors, to suffer an abatement of its claim.

The judgment is reversed and the cause remanded to the District Court with instructions to proceed in conformity with this opinion.

*Reversed.*

MR. JUSTICE DOUGLAS, concurring:

While I concur in the result and in most of the opinion of the Court, I am in disagreement with the majority on one phase of the case.

I do not think that the maximum allowance made by the Commission for fees and expenses is subject to review by the District Court. Sec. 77 (e) (2) now provides that the judge shall approve the plan if satisfied that the amounts to be paid for fees and expenses have been disclosed, "are reasonable, are within such maximum limits as are fixed by the Commission, and are within such maximum limits to be subject to the approval of the judge." Prior to the 1935 amendments to § 77, that provision, then contained in subsection (g) (2), read differently. Though subsection (f) then stated that the Commission had to "fix the maximum compensation and reimbursement" which might be allowed by the court, subsection (g) (2) provided for approval of the plan by the judge if he was satisfied that all such amounts "have been

fully disclosed and are reasonable, or are to be subject to the approval of the judge." The changes made by the 1935 amendments are significant. The total amount of fees and expenses fixed by the Commission became a ceiling beneath which the judge could make readjustments but above which he could not go. Prior to those amendments judicial review of the maximum fixed by the Commission might have been permissible. But the changes made in 1935 clearly indicate, as Judge Evans said in *In re Chicago, M., St. P. & P. R. Co.*, 121 F. 2d 371, 374, that the "court was ultimately to determine the amount of the fees," its action however being "limited by the maximum fixed by the Commission." The legislative history of the 1935 amendments supports that view.[1] Indeed the Com-

---

[1] The testimony of Mr. Craven, the draftsman of the bill, is illuminating:

"Mr. Burgess. That is the provision of this act that the maximum is to be approved by the Commission. The objection that I was making was directed to Commissioner Mahaffie's addition to that. It seems to me that the provision for the approval is adequate. I am not sure whether that maximum is appealable. Are you, Mr. Craven? That is, can the fixation of a maximum by the Commission be appealed under this act?

Mr. Craven. I think not.

Mr. Burgess. You think not?

Mr. Craven. That is my recollection of it.

Mr. Celler. Even if the court would accept the maximum there would be no appeal from the court's ruling?

Mr. Burgess. I do not know of any appeal that you can take from the Commission's fixation of a maximum under this act.

Mr. Celler. That does not seem right.

Mr. Burgess. That (sic) is an appeal from the court's fixation, of course, but that would have to be within the maximum, so I do not know of any appeal.

Mr. Michener. There are a number of powers from which you cannot appeal so far as the decision of the Commission is concerned. They are really given more power in some particulars than the judge.

Mr. Celler. That leaves the entire matter in the hands of the Inter-

mittee Reports stated [2] that the "allowances to be made by the court" were to be "within the maximum prescribed by the Commission." H. Rep. No. 1283, 74th Cong., 1st Sess., p. 3; S. Rep. No. 1336, 74th Cong., 1st Sess., p. 4.

That construction also squares with other provisions of § 77. Thus subsection (c) (12) provides that the judge may make an allowance "within such maximum limits as are fixed by the Commission." It also requires the Commission to "fix the maximum allowances which may be allowed by the court." They indicate to me that in line with the minority views in *United States* v. *Chicago, M., St. P. & P. R. Co.*, 282 U. S. 311, which § 77 adopted (see Congressman LaGuardia, 76th Cong. Rec., 72nd Cong., 2d Sess., p. 5358), the drain on the cash resources of railroads was to be controlled by entrusting to the Commission the responsibility for determining the total amount of cash which should be expended for fees and expenses. Within those limits the courts could make a fair allocation among

---

state Commerce Commission, practically speaking.

    Mr. Michener. Yes.

    Mr. Burgess. Yes.

    Mr. Celler. With no right of appeal at all if the maximum is accepted by the court?

    Mr. Burgess. That is my understanding. If Mr. Craven has a different view, I should be glad to accept his view.

    Mr. Craven. That is my understanding of it."

Hearings on H. R. 6249, House Committee on the Judiciary, 74th Cong., 1st Sess., Ser. 3, p. 86. And see the testimony of Commissioner Mahaffie at p. 70, which is also quoted in *In re Chicago, M., St. P. & P. R. Co., supra,* p. 374.

    [2] The committee print of the bill provided for allowances of expenses and of compensation. See subsections (c)(12) and (e)(2) of H. R. 6249, 74th Cong., 1st Sess., Hearings on H. R. 6249, *supra,* pp. 6, 7. As recommended by both the House and Senate committees, allowances for expenses but not for compensation were provided. The provision for allowances of fees was later restored. 79 Cong. Rec., 74th Cong., 1st Sess., p. 13765.

the various claimants. But beyond those limits the courts could not go. There might of course be questions of law affecting the aggregate maximum allowances made by the Commission which the District Court could review. Thus if in this case the Commission had held that the services rendered by respondent were not within the scope of § 77 (c) (12), that ruling could be reviewed and the matter would then have to be remanded to the Commission for a new determination. § 77 (e). But apart from such instances, the Commission's finding as to the aggregate maximum allowances is conclusive.

It is of course the duty of the Commission not only to fix the maximum amount of the aggregate allowances for fees and expenses but also to determine in the first instance how much each claimant should receive. That is made evident not only by subsection (c) (12) but also by subsection (d) which requires the Commission in its approval of a plan to find that it meets the requirements of subsections (b) and (e). The latter, as has been noted, requires that the amounts to be paid by the debtor or the reorganized company for expenses and fees be "reasonable" as well as "within such maximum limits as are fixed by the Commission." Since the main services rendered in connection with a plan of reorganization under § 77 occur before the Commission, it is in a much better position than the District Court to determine the value, if any, of the services rendered by each claimant. That fact gives great weight to the findings made by the Commission on each claim. But the requirement in subsection (e) (2) that the judge find that the awards are "reasonable" negatives the idea that the findings of the Commission are conclusive. Hence within the maximum limits of the total allowances for fees and expenses the judge can make readjustments—increasing or decreasing amounts awarded to the various claimants or granting allowances where none were made by the Commission. The contrary view was

adopted in *In re Chicago, M., St. P. & P. R. Co., supra,* pp. 374–375. The court felt that since subsection (c) (12) spoke of the "maximum limits" and "maximum allowances" fixed by the Commission, the findings of the Commission as to the maximum amount which each claimant could receive were conclusive. But that interpretation is difficult to reconcile with the requirement of subsection (e) (2) that the judge must find the allowances "reasonable." The use of the plural in subsection (e) (12) only indicates that the maximum allowance for fees and the maximum allowance for expenses are both to be fixed by the Commission.

My conclusion that the aggregate maximum allowances fixed by the Commission are not reviewable does not make § 77 (c) (12) and (e) (2) unconstitutional. It is Congress which has the power under the Constitution to establish "uniform Laws on the subject of Bankruptcies throughout the United States." Article I, § 8, Cl. 4. The scope of the bankruptcy power is not restricted to that which has been exercised. *Continental Bank* v. *Chicago, R. I. & P. Ry. Co.,* 294 U. S. 648, 670–671. The fact that Congress has customarily entrusted administration of the various bankruptcy acts to the courts does not mean that it must do so. As stated by Judge Evans in *In re Chicago, M., St. P. & P. R. Co., supra,* p. 375, "the power of Congress to deal with bankruptcy carries with it the right to select the tribunal, even going outside of courts, to administer debtors' estates." When it comes to fees for services rendered or expenses incurred in connection with bankruptcy proceedings, Congress has plenary power. In § 48 of the general bankruptcy Act Congress has prescribed the schedule of fees for receivers, marshals, and trustees. It could provide that no fees for services rendered during the bankruptcy proceedings might be paid from the estate. The 1935 amendments to § 77 originally were recommended by the committees

on that basis. H. Rep. No. 1283, *supra*, p. 3; S. Rep. No. 1336, *supra*, p. 4. Having that power Congress could fix fees for attorneys and others on a *per diem* or other basis. Cf. *Hines* v. *Lowrey*, 305 U. S. 85. In lieu of any such rigid system of control it could bring to its aid the services of the Commission and vest in it complete authority over all allowances. That clearly would not involve any question of delegation of judicial power. See *Sunshine Coal Co.* v. *Adkins*, 310 U. S. 381, 400. Hence, when Congress granted the Commission exclusive authority over the maximum amount of allowances, it did not give § 77 a constitutional infirmity.

MR. JUSTICE BLACK joins in this opinion.