In re CHICAGO, M., ST. P. & P. R. CO.

CHICAGO, T. H. & S. E. RY. CO. FIRST LIEN BONDHOLDERS' COMMITTEE v. CHICAGO, M., ST. P. & P. R. CO.

No. 9275.

Circuit Court of Appeals, Seventh Circuit.

Nov. 6, 1947.

Reese D. Alsop, of New York City, and Joseph E. Nolan, of Chicago, Ill. (Hunt, Hill & Betts, of New York City, and Bell, Boyd & Marshall, of Chicago, Ill., of counsel), for appellant.

Kenneth F. Burgess, of Chicago, Ill., Fred N. Oliver, of New York City, A. N. Whitlock, M. L. Bluhm, Douglas F. Smith, Ray Garrett, and George Ragland, Jr., all of Chicago, Ill., and Willard P. Scott, of New York City (Sidley, Austin, Burgess & Harper, of Chicago, Ill., and Oliver & Donnally, of New York City, of counsel), for appellees.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal is from an order of the District Court, entered November 5, 1946, denying allowance for compensation to the members of the Chicago, Terre Haute and Southeastern Railway Company First Lien Bondholders' Committee (hereinafter called the committee), for services alleged to have been rendered in connection with the reorganization proceedings of Chicago, Mil-

waukee, St. Paul and Pacific Railroad Company (hereinafter called Milwaukee). On November 26, 1945, the court entered an order fixing the time within which claims were to be filed for expenses incurred and services rendered in connection with the reorganization proceedings.

Pursuant to this order, the appellant committee, consisting of Charles B. Roberts, John E. Blunt, Lemuel H. McHenry and Roger H. Williams, filed its claim for services rendered, the denial of which forms the basis of the present controversy. So far as here pertinent, the petition prayed "for an allowance to the Committee of $20,000 as compensation to it and its members for division among them as they may agree and as may be in their opinion proportionate to the time and labor spent by each in connection herewith and in proportion to the accomplishments of each in aid of the bondholders represented by them and in aid of the consummation of the Plan herein * *." The petition also sought compensation for attorneys who represented the committee and other expenses incurred by the committee and its attorneys, which were allowed and are not involved in this appeal.

The committee's petition for allowance and other similar petitions for compensation in respect to services rendered and expenses incurred from September 1, 1943 to the conclusion of the reorganization proceeding was transmitted to the Interstate Commerce Commission for the fixing of maximum limits, pursuant to Sec. 77, sub. c(12) of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. c(12). The Commission concluded that Section 77, sub. c(12) did not permit the allowance of the committee's claim, and refused to fix a maximum limit therefor. The court below in the order appealed from approved the report and order of the Commission to the effect that no allowance should be made from the debtor's estate for compensation to the committee members.

We think it not important to enter any detailed discussion of the relation existing between the debtor corporation and the Chicago, Terre Haute and Southeastern Railway Company (referred to as Terre Haute), whose bonds were represented by the committee. The position occupied by Terre Haute with reference to the Milwaukee and the provision made in the reorganization proceeding for Terre Haute and its bondholders is described in Group of Institutional Investors et al. v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co., 318 U.S. 523, on page 546 et seq., 63 S.Ct. 727, 87 L.Ed. 959. It appears therefrom, as well as from the record before us, that the committee contested the plan of reorganization as it pertained to Terre Haute and received an adverse decision at the hands of the Supreme Court. It is sufficient here to note that Terre Haute was not a property of Milwaukee but their relations stem from a long-term lease in which Terre Haute was the lessor and Milwaukee the lessee, and that the plan of reorganization required that "substantially all" of the bondholders of Terre Haute agree to the plan as a condition of its becoming effective as to it.

The committee, having failed to sustain its position in the Supreme Court, was confronted with the difficult problem of deciding a course to pursue in the interest of those whom it represented. The record discloses that a number of plans were discussed and considered and that it was finally determined by the committee that it was for the best interest of the Terre Haute bondholders to approve the plan as it pertained to Terre Haute and thereby assist in its confirmation. It was for services rendered by the committee in obtaining the approval of such bondholders that it sought the allowance in question.

The committee devotes much effort in showing that it was generally responsible for procuring the approval of the bondholders represented by it, as well as the importance and benefit which inured to the reorganized company by reason of such approval. We think there is no point in detailing either the efforts of the committee in this respect or the benefits which the reorganized company derived therefrom. This is so for the reason that such matters are not in dispute. In fact, it appears to be conceded on all sides that the services rendered by the committee were valuable

and that the result obtained was of benefit to the reorganized company. While it may be a matter of some conjecture, it is not unreasonable to conclude that without such services the approval of the necessary bondholders could not have been obtained. Neither is there any question as to the reasonableness of the committee's claim.

Numerous issues are raised and discussed, but we think they are all encompassed within the primary issue as to whether Sec. 77, sub. c(12) is controlling; and, if so, was the power of the court as to the committee's claim limited thereby?

Sec. 77, sub. c(12) provides:

"Within such maximum limits as are fixed by the Commission, the judge may make an allowance, to be paid out of the debtor's estate, for the actual and reasonable expenses (including reasonable attorney's fees) incurred in connection with the proceedings and plan by parties in interest and by reorganization managers and committees or other representatives of creditors and stockholders, and within such limits may make an allowance to be paid out of the debtor's estate for the actual and reasonable expenses incurred in connection with the proceedings and plan and reasonable compensation for services in connection therewith by trustees under indentures, depositaries and such assistants as the Commission with the approval of the judge may especially employ."

A study of this provision makes it plain, so we think, that Congress placed a limitation not only upon those who could receive compensation but a further limitation that their allowance must be within a maximum amount fixed by the Commission. Also as to those, the right to receive compensation was limited to services rendered "in connection with the proceedings and plan." As to other parties and groups, including "committees," their right to an allowance was limited to a reimbursement for the actual and reasonable expenses incurred "in connection with the proceedings and plan." It hardly seems reasonable to think that Congress authorized compensation for attorneys and trustees and inadvertently failed to make similar provision for a committee. That Congress had committees specifically in mind is evidenced from the fact that provision was made for an allowance for their expenses. The fact that no provision was made for their compensation is a persuasive indication that Congress intended that they should have none. After all, a committee usually represents a group of bondholders or other creditors, and its primary responsibility is to those whom it represents. Reconstruction Finance Corporation v. Bankers Trust Co., 318 U.S. 163, 63 S.Ct. 515, 87 L.Ed. 680, while not decisive of the question before us, is authority for the proposition that any compensation allowable in a proceeding of the instant nature must be for services rendered in connection "with the proceedings and plan," and we think this case also supports the view that Congress has by this subsection imposed a limitation upon those who may be allowed compensation for such services.

The committee, upon a factual situation subsequently related, argues that subsection c(12) is not applicable for the reason that the services performed by the committee were rendered to the court and not before the Commission. No case is cited and we are aware of none which makes such a distinction. The test which Congress has prescribed is that the services be rendered "in connection with the proceedings and plan," and not that they be rendered before the Commission. That the committee's services were rendered "in connection with the proceedings and plan" is not open to dispute. Moreover, the committee is in a poor position to argue that subsection c(12) is not controlling because its petition for allowance was predicated upon this provision and the court, without objection on the part of the committee, referred its petition to the Commission, as is required where allowances are sought under this subsection. After having thus proceeded, and after the Commission refused to fix a maximum limit, the committee now attempts to maintain the position that subsection c(12) is not applicable, that such reference was unnecessary, and that the court independently of any action by the Commission was authorized to make the allowance.

In thus construing subsection c(12) we have not overlooked the committee's contention that a court in a proceeding under Sec. 77 is in the position of a federal court appointing a receiver in equity and thus has the power to make an allowance to the committee irrespective of subsection c(12). It is true that subsection a authorizes the court to exercise certain powers in addition to those conferred by the section, provided they are "not inconsistent with this section." As we construe it, subsection c(12) is inconsistent with the power of the court to allow compensation for services rendered "in connection with the proceedings and plan," except as therein provided. If the committee's contention in this respect be accepted, it would seriously impair, in fact well near emasculate, the salutary provisions of subsection c(12). If the court has the power which the committee asserts, we see no reason why it could not allow compensation not only to committees but to any others who might aid in the proceedings.

We shall not cite or discuss the numerous cases cited by the committee in support of its contention in this respect. None of them, with the exception of In re Chicago & North Western Ry. Co., 7 Cir., 121 F.2d 791, had anything to do with a proceeding under Sec. 77. In the North Western case this court held that the court had the power, without reference to the Commission, to allow and make payable out of the estate the expenses to be incurred by a debtor in perfecting an appeal to this court. Our holding was predicated largely on the theory that subsection c(12) covered services which had been rendered, while the amount sought was for a service or expense to be incurred in the future. A further basis for our conclusion might well have been that the allowance sought was not for services rendered "in connection with the proceedings and plan," and therefore was not within the terms of subsection c(12). At any rate, neither this case nor any of the others relied upon by the committee furnishes any support to the argument here presented.

Another contention advanced by the committee is that its services were rendered under the express authority of the court and at the request of the reorganization managers, and that even though subsection c(12) be held applicable the claim for compensation should be allowed as expenses incurred by the reorganization managers. As already noted, the committee, after the adverse decision of the Supreme Court, decided that it was in the interest of the bondholders to approve the plan. On February 20, 1945, at the time the reorganization proceeding came before the court for confirmation, counsel for the committee, acting on instructions therefrom, appeared before the court and advised it of the decision of the committee to go along with the plan. Counsel suggested that there might be some difficulty in obtaining the necessary approval but that the committee (one member refusing to agree) was willing to assist and requested the court to approve of the committee sending a letter to the bondholders suggesting that they approve of the plan. In the meantime, the reorganization managers had sent out ballots to the Terre Haute bondholders, under the approval of the court, in order to obtain the vote of such bondholders as to whether they approved the provisions of the plan as it related to them. Without going into detail, it is sufficient to state that the reorganization managers met with little success. Sometime in June 1945, counsel for the reorganization managers called the chairman of the committee by telephone, informed him in effect of the disappointing result being obtained from the bondholders, reminded him of the statement made by the committee's counsel in court that the committee would be willing to help, and inquired if the committee was still willing. Counsel for the managers was informed that the committee would do its best to bring about the necessary approval.

Thereupon, the committee on June 7, 1945 filed a petition in the court evidencing its willingness to assist in procuring a favorable vote, recited that favorable action by the bondholders would redound not only to their advantage but also to the advantage of the debtor, and prayed that "an order authorizing it to retain persons to

solicit the favorable vote of 'the Terre Haute' bondholders to the plan, and authorizing the debtor's trustee to pay to your petitioner the reasonable expenses thereof, not exceeding $15,000, for that purpose." The court on June 12, 1945 entered an order, predicated upon such petition, which among other things authorized the committee to retain persons to solicit the bondholders and directed the debtor's trustee to pay the committee the cost of such solicitation. The order further recited: " * * * and it appearing to the Court that it is in the interests of the Trust Estate and ultimate reorganization that all of the holders of said 'Terre Haute Bonds' should vote in respect of the provisions of the Plan relative to the 'Terre Haute Bonds' and Lease, and that the holders of such bonds who have not yet voted in respect of said provisions should be solicited to vote in favor thereof, and that it is appropriate that said Committee should solicit the holders of said bonds to cast their votes; and it further appearing that the reasonable cost of such solicitation will be not less than $10,000 * * *." The court authorized the committee to retain suitable persons to solicit the bondholders, and in conclusion stated: "Further Ordered that upon proper showings made to the Trustees of the property of the Debtor herein, amounts not to exceed $10,000 for the cost of such solicitation shall be advanced to said Committee by said Trustees out of the funds of the Trust Estate pending final determination as to the total amount to be allowed for the cost of such solicitation."

■ The committee engaged the services of a professional solicitor whose claim for such services has been approved and paid. It is plain from the court's order that the payment for this service was authorized by the court, but we are unable to find, as the committee would have us do, any authority in the order for compensation to the committee for the services rendered by it, valuable as they might have been, in obtaining the desired result. In the report of the Commission concerning this order, it is stated: "The court authorization referred to above specified that the committee might retain solicitors, and

placed a limitation upon the sum which could be expended for such services. It contained no direction or authorization to committee members to undertake such services themselves." We agree with the interpretation which the Commission places upon the court's order.

■ So we think there is no merit to the contention that the committee's claim for compensation can properly be charged as an expense incurred by the reorganization managers. The committee was not acting as an agent or on behalf of such managers in performing the service for which compensation is sought. It is true, no doubt, that the managers were glad to have the assistance of the committee, which the latter proffered in open court. About the most which can be said of the relation existing between the committee and the managers is that the latter were glad to avail themselves of the committee's offer. It also appears that this theory for obtaining compensation was an afterthought. If the committee was entitled to be paid by the reorganization managers as an expense incurred by them, we think the claim should have been presented directly to such managers, and in turn they would have sought its allowance from the court and the Commission as an expense incurred "in connection with the proceedings and plan." The petition for allowance, however, and the course which has been pursued indicate that no such theory was relied upon. Moreover, the primary responsibility of the committee was to the bondholders whom it represented. That this responsibility was discharged in good faith is evidenced by the fact that the committee on their behalf contested the plan all the way to the Supreme Court. It was only after an adverse decision that it agreed to cooperate and then only, and rightfully so, after the committee had determined that the best interest of the bondholders called for approval of the plan. The benefit which inured to the reorganized company was that which flowed from the committee's labors in behalf of its bondholders whom it was under obligation to serve.

We agree with the Commission that it was without authority to fix a maximum

limit of compensation for the committee and we agree with the lower court that it, in the absence of such authority on the part of the Commission, was also without authority to make an allowance of compensation as prayed for by the committee.

The order appealed from is affirmed.