### In re INTERNATIONAL POWER SECURITIES CORP.
### Civ. No. 1602a.

United States District Court
D. New Jersey.
Feb. 19, 1954.

See also 109 F.Supp. 544.

---

Milton, McNulty & Augelli, Jersey City, N. J., for trustee.

White & Case, New York City, for indenture trustee and others.

George Zolotar, New York City, for Securities and Exchange Commission.

SMITH, District Judge.

This is a corporate reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The matter is before the Court at this time on the petitions for allowances filed herein by the Bankers Trust Company, the indenture trustee, and White & Case, attorneys for the indenture trustee. Their right to "reasonable compensation" for the services rendered is governed by Section 242 of the Act, 11 U.S.C.A. § 642.

The general principles by which we have been guided in our evaluation of

the services rendered by these petitioners were briefly reviewed in our earlier opinion, filed herein on April 24, 1953 and reported in 112 F.Supp., at page 46. A further review of these principles would add little or nothing to this opinion.

### Petition of Indenture Trustee

There were included among the assets of the debtor three mortgages on the utility properties of Societa Edison of Milan, Italy, hereinafter identified as the Edison Company. These mortgages, which were the subjects of three separate trust indentures, were held by the indenture trustee as security for three separate bond issues, to wit, Series C Bonds, Series E Bonds, and Series F Bonds. The indenture trustee served throughout these proceedings. The present claim for compensation is predicated upon the services rendered in the proceeding and in connection with the formulation of the plan of reorganization.

The indenture trustee requests an allowance in the amount of $72,524.42. The requested allowance includes the following charges for the "ordinary services" rendered by the indenture trustee in the administration of the trust:

Charges Accrued Prior to January 1, 1947:

|  | Series C | Series E | Series F |
| --- | --- | --- | --- |
| General administration | $7,796.32 | $8,645.83 | $5,566.67 |
| Registration | 608.33 | 691.67 | 695.83 |
| Cremation of bonds, &c. | 99.74 | 180.28 | 165.15 |
| Total | $8,504.39 | $9,517.78 | $6,427.65 |

Charges Accrued Subsequent to January 1, 1947:

|  | Series C | Series E | Series F |
| --- | --- | --- | --- |
| General administration | $6,041.67 | $6,041.67 | $3,866.67 |
| Registration | 483.33 | 483.33 | 483.33 |
| Cremation of bonds, &c. | 62.15 | 90.85 | 11.60 |
| Total | $6,587.15 | $6,615.85 | $4,361.60 |

The computation of these charges is based upon, and is in accord with, three schedules of fees upon which the debtor and the indenture trustee agreed in 1926 and 1927. (See exhibits annexed to petition.) These schedules were approved by the Edison Company, which agreed to reimburse the indenture trustee in amounts not to exceed: $3,625 per annum on the Series C Bonds, $3,625 per annum on the Series E Bonds, and $3,000 on the Series F Bonds. It was further agreed: first, that if these amounts were insufficient to pay the accrued charges, the deficiency would be paid by the debtor; and second, that if these amounts were more than sufficient to pay the accrued charges, the surplus would be paid to the debtor.

The requested allowance includes also a claim for compensation for "extraordinary services" rendered by the indenture trustee. There are included in this claim two charges: one in the amount of $9,500 for services rendered prior to January 1, 1947, and another in the amount of $20,000 for services rendered subsequent to January 1, 1947. These separate periods, as well as those noted in the preceding paragraph, have been fixed by the indenture trustee for reasons hereinafter discussed.

The verified petition discloses that the indenture trustee has received from the Public Utility Credit Institute the sum of $68,192.15, which it still holds. This payment was made pursuant to a provision, paragraph 4(v), contained in the proposal of settlement submitted by the

Public Utility Credit Institute, an integral part of the plan of reorganization. This payment was made "in full settlement of all amounts owing to the Indenture Trustee on account of expenses" which accrued prior to January 1, 1947.

The proposal of settlement contained a specific provision under which the Public Utility Credit Institute agreed to "pay or cause to be paid to or upon the order of the Indenture Trustee, by certified or bank cashier's check payable in United States dollars in New York Clearing House funds, the sum of $68,192.15, in full settlement of all amounts owing to the Indenture Trustee on account of expenses and services of the Indenture Trustee as provided in the Societa Edison Mortgages to and including January 1, 1947, it being understood that if it be determined by the Reorganization Court, or any appellate court upon review of the determination of the Reorganization Court, that the Reorganization Court has jurisdiction to pass upon said amounts the propriety or reasonableness of said amounts may be passed upon by the Reorganization Court". It is clear that the Public Utility Credit Institute thus assumed the liability of the Edison Company; the reason for its assumption of this liability is not relevant here.

The indenture trustee here urges that the sum of $68,192.15 should be applied in payment of its expenses as follows:

Services and expenses of Indenture Trustee, prior to January 1, 1947.................. $35,549.05

Counsel fees payable by the Indenture Trustee, accrued prior to February 24, 1941...... 4,275.00

Counsel fees payable by the Indenture Trustee, accrued subsequent to above date and prior to January 1, 1947........ 25,000.00

Fees and expenses subsequent to January 1, 1947........... 3,368.10

This allocation is clearly in derogation of the statutory jurisdiction of this Court to determine the reasonableness and propriety of allowances and to fix the amounts thereof. The indenture trustee has, under the guise of allocation, assumed the authority to determine the reasonableness and propriety of not only its own allowance but also that of its attorneys for the designated period.

### Jurisdiction of the Court

This petition for an allowance would present little or no difficulty if it were not for the anomalous position taken by the indenture trustee. The authority of the Court to determine the reasonableness and propriety of the charges for services rendered subsequent to January 1, 1947, is conceded, but it is argued that the Court has no jurisdiction to either determine the reasonableness of the charges for services rendered prior to January 1, 1947 or adjust the allocation, supra, proposed by the indenture trustee. We are of the opinion that the argument is without merit.

The present petitioner seeks an allowance for services rendered in the proceeding and in connection with the plan of reorganization. The pertinent provisions of Section 242 of the Act, supra, vests in the Court the exclusive jurisdiction to determine the reasonableness and propriety of allowances and to fix the amounts thereof. This jurisdiction is not limited to allowances payable out of the debtor's estate, but extends to all allowances for services by whomever paid. Any doubt as to the broad authority of the Court is dispelled by the express language of Section 221, sub. 4 of the Act, 11 U.S.C.A. § 621, sub. 4, and further, by the provisions of Section 216(3) of the Act, 11 U.S.C.A. § 616 (3). These provisions are consistent and may be read together.

It was held in Leiman v. Guttman, 336 U.S. 1, at page 5, 69 S.Ct. 371, at page 372, 93 L.Ed. 453: "The control of the judge is not limited to fees and allowances payable out of the estate. Section 221(4) places under his control 'all payments made or promised' (1) by 'the debtor' or (2) * * * or (3) 'by any other person' for services rendered 'in

connection with' the proceeding or 'in connection with' the plan and 'incident to' the reorganization. The services of petitioners concededly met those requirements; * * *. Moreover these petitioners are included in the classes of claimants to whom the judge is empowered to allow reasonable compensation. To lift petitioner's claim from § 221(4) would therefore be to rewrite it or to hold that when extended so far it was unconstitutional. The latter has not even been intimated. The former is not permissible." This language is apposite in the present case. See also Brown v. Gerdes, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659; Reconstruction Finance Corp. v. Bankers Trust Co., 318 U.S. 163, 63 S.Ct. 515, 87 L.Ed. 680.

The indenture trustee contends that the proposed allocation, supra, is in accordance with the agreements of 1926 and 1927, supra. This, however, is not the fact. The proposed allocation embraces the following items: first, the charges for "ordinary services" rendered prior to January 1, 1947; second, the charges for "extraordinary services" rendered prior to January 1, 1947; and third, counsel fees in the total amount of $25,000 for services rendered by the attorneys for the indenture trustee in connection with these proceedings. The original agreements did not reserve to the indenture trustee a right to make the proposed allocation; in fact, there were no provisions which contemplated the exigencies of a bankruptcy proceeding.

The payment made by the Public Utility Credit Institute was made pursuant to the proposal, supra, and in settlement of its disputed liability. The proposal, which now seems somewhat ambiguous, specifically recognized at least the potential jurisdiction of this Court to determine "the propriety or reasonableness" of all amounts "owing to the Indenture Trustee on account of expenses and services." We are of the opinion that the proposal is consistent with the provisions of Section 221, sub. 4 only if it is so construed.

■ There is, however, a further answer to the contention here made by the indenture trustee. The agreements did not reserve to the indenture trustee a right, in the event of bankruptcy, to determine the reasonableness of either its allowance for services or that of its attorneys. Such a reservation would have been invalid and unenforceable. See Leiman v. Guttman, supra.

■ We conclude that this Court has exclusive jurisdiction to determine the reasonableness and the propriety of the fees and charges payable to the indenture trustee either out of the debtor's estate or out of the fund made available by the Public Utility Credit Institute. This fund and the allocation thereof are subject to the jurisdiction of the Court.

Allowance to Indenture Trustee

■ The indenture trustee has requested an allowance of $42,414.42 for "ordinary services" rendered in the administration of the trust and in connection with these proceedings. This request is excessive. The "ordinary services" rendered are fully summarized in a voluminous verified petition. They include the maintenance of adequate facilities for the administration of the trust; the maintenance of the necessary books, records and accounts; the preparation of periodic reports; the receipt and cremation of bonds and coupons; and, the general services usual in the administration of trust estates. We are convinced, however, that the "ordinary services" rendered by the indenture trustee were routine.

There is an additional factor which must be taken into consideration in our evaluation of the "ordinary services" rendered. The initiation of these proceedings in 1941 necessarily affected the marketability of the bonds, and as a result thereof the routine services of the indenture trustee became less burdensome. We are fully aware that these proceedings imposed upon the indenture trustee additional duties not contemplat-

ed by the trust indenture, but for these it seeks additional compensation for "extraordinary services."

We are of the opinion that the sum of $18,926.41 is fair and reasonable compensation for the "ordinary services" rendered in the administration of the trust and in connection with these proceedings. This allowance is computed as follows:

February 24, 1941, to November 1, 1951

|  | Series C | Series E | Series F |
| --- | --- | --- | --- |
| General administration | $5,416.66 | $5,416.66 | $4,333.33 |
| Registration | 1,083.33 | 1,083.33 | 1,083.33 |
| Cremation of bonds, &c. | 161.89 | 171.13 | 176.75 |
| Total | $6,661.88 | $6,671.12 | $5,593.41 |

These computations are based upon the following unit allowances: (1) $500 per annum for the general administration of Series C Bonds and Series F Bonds; (2) $400 per annum for the general administration of the Series F Bonds; (3) $100 per annum for the registration of each class. The cremation charges are those claimed by the indenture trustee.

The indenture trustee has requested an allowance of $29,500 for "extraordinary services" rendered in connection with these proceedings. This request is excessive. The verified petition states that 1,059 hours, approximately 151 days, was spent by executive officers of the indenture trustee in the performance of "extraordinary services." This statement is not supported by anything except a general itemization. The indenture trustee apparently seeks compensation at the rate of approximately $190 per day. We concede that the executive officers rendered valuable assistance to the trustee and the committees, but their services were not such as to warrant compensation to the indenture trustee at the rate of $190 per day. An examination of the petition discloses that many of the "extraordinary services" were routine in character.

The indenture trustee had a right to appear in these proceedings to protect the interest of the bondholders. It must be remembered, however, that in the discharge of its duty to the bondholders the indenture trustee had the assistance and cooperation of two active committees and their attorneys; these committees represented the holders of Series E Bonds and Series C Bonds. See earlier opinion, 112 F.Supp. pages 54 to 56, inclusive. The members of these committees were men of competence and experience; in fact, two members of the Series E Committee were particularly qualified. See the earlier opinion of the Court, supra.

The executive officers of the indenture trustee were active in the proceedings, and their services were of direct benefit not only to the bondholders but also to the estate of the debtor. Their services, which are summarized at great length in the petition, included: exploration and study of the affairs of the debtor; study of possible plans of reorganization; study of suggestions and proposals submitted by others, including the committees; participation in numerous conferences; study and analyses of available financial data; participation in the negotiations with the Edison Company and Public Utility Credit Institute; proposal of amendments to plan of reorganization; participation in the hearings on the plan of reorganization; and, preparation of periodic reports submitted to the Treasury Department.

The services performed by the executive officers of the indenture trustee paralleled, to a very noticeable degree, the services performed by the members of the two active committees;

there was an obvious duplication of services. This factor was taken into consideration in our evaluation of the services rendered by the committees and must be taken into consideration in our evaluation of the services rendered by the indenture trustee. Finn v. Childs Co., 2 Cir., 181 F.2d 431, 436. There were times when the duplication of services was practically unavoidable, but even in such circumstances the debtor's estate cannot be required to pay twice for the same service. Ibid.

It was held in Finn v. Childs, supra: " * * * the fact that one committee is already at work will * .*. * not be held to prevent committees or individuals intervening subsequently from receiving compensation. 6 Collier on Bankruptcy ¶13.02, pp. 4508–9, 14th Ed. 1947. But this does not mean that the estate must * * * pay twice—or more—for the same services. It means rather that where duplication of services by succeeding committees is not practically avoidable the amount which the services are worth should * * * be divided pro rata among the various parties who performed the duplicate services, rather than awarded to the first party in the field." This principle is applicable where, as here, the work of the committees was duplicated by the indenture trustee and vice versa.

■ We are of the opinion that an allowance of $10,000 is fair and reasonable compensation for the "extraordinary services" rendered by the indenture trustee. This allowance is comparable although not identical with, the allowance heretofore granted to the Series E Committee. An allowance in the said amount will be granted.

### Allowance for Attorneys of Indenture Trustee

■ The attorneys for the indenture trustee have requested an allowance of $120,000 for services rendered in connection with these proceedings and in the formulation of the plan of reorganization. The Securities and Exchange Commission has recommended an allowance of $50,000, which the petitioners contend is grossly inadequate. The recommendation is not conclusive, but it is our opinion that it should be given great weight. See the earlier opinion of the Court, supra.

The verified petition states that 4,162 hours, approximately 595 days, were spent by members of the firm and associates in the performance of services beneficial to the debtor's estate. The requested compensation is at the rate of more than $200 per day. This is excessive. We concede that if all the services were of such importance as to require the attention of the members of the firm, $200 per day would not be excessive. An examination of the petition discloses, however, that many of the legal problems which confronted the attorneys for the indenture trustee were routine and did not require the attention of the members of the firm; in fact, many of these problems did not require the attention of the associates. There were times, for example, when an associate of the firm appeared in court on routine hearings. These appearances were obviously unnecessary.

The petitioners were active in the proceedings, and their services, although at times duplicative, were of benefit to the estate and of assistance in the formulation of the plan of reorganization. Their services included: examination and study of the mortgages and trust indentures; study of the legal problems occasioned by the mortgage defaults; exploration and study of the affairs of the debtor; consultation with the trustee and other interests on problems incident to the administration; survey and study of possible plans of reorganization; participation in conferences; participation in the negotiations which ultimately led to the submission of the proposal of settlement; participation in the hearings on the plan of reorganization, and this included the submission of proposed amendments; study of tax problems; and, assistance to the attorney for trustee in the study and preparation

of documents necessary to the consummation of the plan of reorganization.

We cannot overlook the fact, however, that there was a duplication of services, at times unavoidable but at other times avoidable. There were times during the course of the proceedings when the attorneys for the indenture trustee and the attorneys for the committees were not in agreement, but there were other times when they were in substantial agreement. The duplication of services on the latter occasions was clearly avoidable. The principle adopted by the court in the case of Finn v. Childs Co., supra, is applicable here.

■ We are of the opinion that the allowance of $50,000 is fair and reasonable compensation for the services rendered by the attorneys for the indenture trustee. An allowance in said amount will be granted.

### Costs

Each of the petitioners has made application for reimbursable costs. Their right to these costs is not disputed. Reimbursable costs in the amount of $2,006.68 will be allowed the indenture trustee. Reimbursable costs in the amount of $26.30 will be allowed the attorneys for the indenture trustee.

### Proof of Claim

There are included in the petitions for allowances claims for compensation for services rendered prior to the commencement of these proceedings. These claims were heretofore made the subject of a proof of claim which, we are informed, has been filed. We have given no consideration to these claims. If they are disputed by the trustee, the claimants will be accorded an opportunity to present them in the usual manner.

### Conclusion

#### I.

The indenture trustee will be granted an allowance of $28,926.41 and costs in the amount of $2,006.68.

#### II.

The attorneys for the indenture trustee will be granted an allowance of $50,000 and costs in the amount of $26.30.