In the Matter of **BOSTON & PROVI-DENCE RAILROAD CORPO-RATION, Debtor.**

**BOSTON & PROVIDENCE RAILROAD DEVELOPMENT GROUP, Appellant.**
No. 7300.

United States Court of Appeals
First Circuit.
July 24, 1969.

Armistead B. Rood, Joseph B. Hyman and Lawrence T. Perera, Boston, Mass., for appellant.

Robert W. Meserve, Boston, Mass., with whom Benjamin H. Lacy, Charles W. Mulcahy, Jr., Laurence M. Channing, Rya Featherston, James Garfield, Nutter, McClennen & Fish, Mulcahy & Mul-

cahy, Hill & Barlow, and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Efforts have been underway since 1938 to reorganize the Boston & Providence Railroad Corporation (debtor) in accordance with § 77 of the Bankruptcy Act, 11 U.S.C. § 205. Understandably, various plans have been spawned during the more than thirty years since that time. It will be sufficient for our purposes, however, to trace the history and frustrations of the last of these efforts, the 1966 plan.[1]

This plan was approved in 1966 by both the Interstate Commerce Commission, see Boston & Providence R. R. Reorganization, 327 I.C.C. 10, and by the District Court for the District of Massachusetts. See In re Boston & Providence R. R., 260 F.Supp. 415 (1966)[2] and an appeal to this court by the Boston & Providence Stockholders Development Group (Group),[3] the appellant herein, was dismissed in 1967 for want of diligent prosecution, cert. denied, 389 U.S. 974, 88 S.Ct. 475, 19 L.Ed.2d 467 (1967). Thereafter the plan was approved by the creditors and stockholders, and after one further trip back to the Commission for reconsideration, see Boston & Providence R. R. Reorganization, 333 I.C.C. 713 (1968), it was at long last confirmed by the district court.

By now the central issue before us is relatively simple: Can the Group,

1. One interested in a further history of these transactions may profitably consult the detailed opinion of this court in Freeman v. Mulcahy, 250 F.2d 463 (1st Cir. 1957), cert. denied, 356 U.S. 939, 78 S.Ct. 781, 2 L.Ed.2d 813 (1958).

2. The provisions of the 1966 plan are analyzed in the district court's opinion.

3. The Group, representing approximately ten per cent of the debtor's stock in the public class, first came on the scene in 1954 because of dissatisfaction with the provisions of a suggested plan of re-

organization then current. It has been most active in the subsequent stages of litigation. It apparently adopted the Development Group title because of what it regarded as a particular concern to develop B. & P. properties, especially through realization of the increasing values of properties in nonrailroad uses. The Group is to be distinguished from the Boston & Providence Railroad Corporation Stockholders Committee, which holds the bulk of B. & P. stock in the public class and was the original sponsor of the pending plan.

under the guise of an appeal from the confirmation order, relitigate the issues that were settled against it by the dismissal of its appeal from the district court's order approving the reorganization in 1966? The answer must be in the negative.

The district court found in substance that the plan had been accepted by the requisite proportion of creditors and stockholders of each class to which submission was required and that these acceptances were not made or procured by any means forbidden by law. It is the debtor's position[4] that only questions arising in connection with the confirmation order and any change in circumstances since the approval order are still open on this appeal. The Group, on the other hand, contends that it is free to raise questions as to whether the underlying plan, long since approved, is fair and equitable.

We start with the statute:

"Upon confirmation by the judge, the provisions of the plan and of the order of confirmation shall, subject to the right of judicial review, be binding upon the debtor, all stockholders thereof, including those who have not, as well as those who have, accepted it, and all creditors secured or unsecured, whether or not adversely affected by the plan, and whether or not their claims shall have been filed, and, if filed, whether or not approved, including creditors who have not, as well as those who have, accepted it." 11 U.S.C. § 205(f).

The Group contends that it is clear from the wording of this statute that judicial review is available "upon confirmation" both of the order of confirmation and of the provisions of the plan. They cite In re Chicago & N. W. Ry., 126 F.2d 351, 354 (7th Cir. 1942), cert. denied, 318 U. S. 793, 63 S.Ct. 987, 87 L.Ed. 1158 (1943) and In re Denver & R. G. W. Ry., 150 F.2d 28, 33 (10th Cir. 1945), rev'd on other grounds, 328 U.S. 495, 66 S.Ct. 1282, 90 L.Ed. 1400 (1946), as instances in which such review was actually accorded.

■ In our opinion, however, this interpretation is not compelled either by the terms of the statute or by the cited cases. The terms of the statute are merely congruent with the situation that arises when no appeal at all is taken until after confirmation and thus both appeals can be consolidated. In such a case the entire review would take place after confirmation. But the essence of the statute is that review of both approval and confirmation be available, not that they both be available after confirmation. The two cases cited by the Group may be thus explained. In neither is there any discussion of a prior review of approval. Rather, in these cases it was possible to consolidate all the issues into one appeal.[5]

We assume, without deciding, that appellant had an election of whether to appeal from approval or confirmation. Appellant appealed unsuccessfully from the district court's order of approval and it must be bound by its action. To be sure, the appeal was not considered on its merits but unlike dismissal of a complaint, dismissal of an appeal always involves prejudice in the ordinary case be-

---

4. The appellees in this case include not only the debtor but also B. & P. Railroad Corporation Stockholders Committee, a Trustee in Reorganization of the B. & P. and a Trustee in Reorganization of the New York, New Haven and Hartford Railroad Company.

5. In addition, *Denver, supra,* was a case in which certain creditors whose approval was necessary had not accepted the plan. This provided a special basis for examining the merits of the plan for the protec-

tion of these dissenting creditors under § 205(e): "*Provided,* That, if the plan has not been so accepted by the creditors and stockholders, the judge may nevertheless confirm the plan if he is satisfied and finds, after hearing, that it makes adequate provision for fair and equitable treatment for the interests or claims of those rejecting it; that such rejection is not reasonably justified in the light of the respective rights and interests of those rejecting it and all the relevant facts; * * *."

cause the period for appeal will have lapsed. The result should not be different in a section 77 case merely because of the subsequent act of confirmation. To hold otherwise would permit appellant to delay and put its adversaries to great expense at no cost to itself.

■ While this discussuion disposes of the Group's appeal for the most part, a few additional comments are in order. The Group also complains that the plan is defective in limiting the payment of all reorganization expenses to a figure less than the allowances approved or to be approved by the Commission. This appeal was presented twice on oral argument. After the first argument, we specially requested the Commission to consider the Group's interpretation of the plan on this point. Subsequently, the Commission, considering this matter on an expedited basis, ruled that the pertinent section of the plan does not impose a maximum limit on the amount of the administration claims but governs the amount to be kept available at the time of consummation of the plan; and that accordingly there is no need for the plan to be amended. Thus the Group's complaint in this regard is based on an incorrect factual premise.

Whatever the original merits of the plan, the Group now contends that it must be reassessed in the light of Port Authority Trans-Hudson Corp. v. Hudson Rapid Tubes Corp., 20 N.Y.2d 457, 285 N.Y.S.2d 24, 231 N.E.2d 734 (1967), which rejected the scrap value test as the sole standard of valuation. But the Commission has already concluded that *Hudson Tubes* does not constitute a "new development" such that reconsideration of the plan would be justified. Boston & Providence R. R. Reorganization, 333 I.C.C. 713, 718 (1968). In any event, it is not true that the plan in question here takes only scrap value into account. The plan provides, in addition to an outright payment to stockholders, for Certificates of Contingent Beneficial Interest to allow further receipts for stockholders in the event that the potential for sale of real estate for nonrailroad uses should be realized. See In re Boston & Providence R. R., *supra* 260 F.Supp. at 418. If there should be occasion for applying the *Hudson Tubes* rule to B. & P. property, the resulting benefit would enure to the certificate holders.

■ The last contention to be considered may be dismissed summarily. The Group complains that the vote of the stockholders approving the plan was induced by representations of tax benefits that are not materializing. We need only remark that nothing in the record before us has been suggested that supports these allegations concerning what motivated the stockholders.[6]

We, therefore, conclude that the district court did not err in confirming the Plan of Reorganization and did not

6. On May 23, 1969, the Group filed a "Supplemental Notice of Appeal" (Docket Number 7350) in connection with the following denials of the district court. (1) Denial of the Group's Motion of September 26, 1966, for the District Court to decide whether B. & P. is liable on certain debentures. (2) Denial of the Group's petition of August 23, 1965 for the District Court to proceed for the accomplishment of major sales of properties of B. & P. in the Boston area. (3) Denial of the Group's Motion of April 3, 1959, for an order declaring B. & P. a class I line-haul carrier and not a mere lessor. (4) Denial of an amended Motion in connection with 3, *supra*, filed on or about October 16, 1963.

The debtor has moved to dismiss these appeals as untimely and we think that its motion must be granted. The district court never actually denied said motions and petition and it is the Group's theory that at some point it ought to be able to treat them as denied *sub silentio*. This may well be true but if they were denied by implication at all, this surely occurred no later than when the district court confirmed the plan on November 4, 1968. In view of the above we need not consider the debtor's "Second Motion to Dismiss Appeals" and the Group's answer thereto.

abuse its discretion in denying the Group's motion of November 4, 1968, to return the plan to the Commission.

Affirmed.