### In the Matter of BOSTON & PROVIDENCE RAILROAD CORPORATION, Debtor.

**Richard Joyce Smith, Trustee, Appellant.**
**Joseph B. Hyman, Cross-Appellant.**
**Nos. 7575, 7597.**

United States Court of Appeals,
First Circuit.
June 15, 1970.
Rehearing Denied July 9, 1970.

Joseph P. Cooney, Hartford, Conn., with whom James Wm. Moore, New Haven, Conn., David T. Ryan, and Cooney & Scully, Hartford, Conn., were on brief, for Richard Joyce Smith, Trustee.

Talcott M. Banks, Boston, Mass., with whom Armistead B. Rood, Lawrence T. Perera, Donald F. Winter, and Palmer & Dodge, Boston, Mass., were on brief for Boston & Providence R.R. Development Group and Joseph B. Hyman.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is another episode in the protracted litigation concerning the reorganization of the Boston & Providence Railroad. Commenced in 1938, the reorganization appears to be drawing to a close with our recent affirmance of the district court's confirmation of a plan. In re Boston & Providence R.R., 413 F.2d 137 (1st Cir. 1969), cert. denied, Boston & Providence R.R. Development Group v. Bartlett, 397 U.S. 979, 90 S.Ct. 1103,

25 L.Ed.2d 390 (1970).[1] Now before us are cross-appeals from certain aspects of the district court's judgment allowing expenses and counsel fees under § 77 (c) (12) of the Bankruptcy Act, 11 U.S. C. § 205(c) (12) (1964). In No. 7575 the trustee of the New York, New Haven & Hartford Railroad, who under the terms of the plan of reorganization will succeed to assets of the B & P remaining after the payment of expenses and fees, appeals from allowances to the Boston & Providence Stockholders Development Group[2] and its attorneys, claiming none were warranted as a matter of law. In No. 7597 Joseph B. Hyman, one of the Development Group attorneys, appeals from the same judgment, contending that the allowance to him was inadequate.

In 1966 the Development Group and its attorneys submitted petitions for reimbursement and allowances to the district court for the period between January 1954 and June 1966. Acting under § 77(c) (12), the court referred the petitions to the Interstate Commerce Commission for determination of maximum limits in accordance with the statute. Extensive hearings were held and a report and order were issued by the Commission's examiner in December 1967. The Commission modified the examiner's decision, generally raising the limits set, in July 1968. Boston & P.R.R. Corp. Reorganization, 331 I.C.C. 614. In December 1969, the district court held a hearing on the petitions and subsequently issued an order granting allowances and reimbursements equal to the maximum limits set by the Commission. The only evidence before the court was the Commission's decision, the examiner's report, and an affidavit by counsel for the trustee. We add, however, that it was not as if this were a new matter for the

court. It had lived with the case in its many manifestations for over three decades.

Both the New Haven trustee and Attorney Hyman contend that various findings by the Commission are unsupported by substantial evidence. We think, however, that they cannot be permitted to challenge the decision on that ground.

The Supreme Court said long ago that a district court, operating under § 77(c) (12), is to act on the basis of the Commission's report without "a hearing de novo on the issue of the reasonable worth of the services rendered or the propriety of the expenses incurred, or a reappraisal by the court of the facts." Reconstruction Finance Corp. v. Bankers Trust Co., 318 U.S. 163, 169, 63 S.Ct. 515, 519, 87 L.Ed. 680 (1943). We take this to mean that the Commission's report is presumptively correct and that a party opposing its findings and conclusions is bound to go forward and demonstrate any error, whether of law or fact. This burden necessarily includes introduction of the transcript and evidence before the Commission, as they are not automatically made a part of the record in the district court. Neither appellant saw fit to do so, despite clear awareness that the transcript might not be before the court. In such circumstances, they cannot now question the sufficiency of the evidence before the Commission. Accordingly, we accept the Commission's findings in their entirety and shall consider only two kinds of inquiries: whether the findings support the Commission's conclusions and whether the Commission made errors of law.

This conclusion is supported by the practice in rate-making cases before the Commission. In Mississippi Valley

---

1. For the history of this reorganization see In re Boston & Providence R. R., 413 F.2d 137 (1st Cir. 1969); In re Boston & Providence R. R., 260 F.Supp. 415 (D.Mass.1966); Freeman v. Mulcahy, 250 F.2d 463 (1st Cir. 1957).

2. The Development Group is a group of B & P shareholders controlling a small amount of the company's stock. It is not an authorized protective committee under § 77(p) of the Act, 11 U.S.C. § 205(p) (1964).

Barge Co. v. United States[3] a carrier sought to enjoin a Commission rate order, but did not introduce in the district court the evidence presented to the Commission. The Court said:

"The settled rule is that the findings of the Commission may not be assailed upon appeal in the absence of the evidence upon which they were made. * * * The appellant did not free itself of this restriction by submitting additional evidence in the form of affidavits by its officers. For all that we can know, the evidence received by the Commission overbore these affidavits or stripped them of significance. The findings in the report being thus accepted as true, there is left only the inquiry whether they give support to the conclusion." 292 U.S. at 286, 54 S.Ct. at 693.

The same considerations apply with equal force to the case at bar.[4]

The balance of the trustee's case boils down to the contention that the Commission was not justified in finding that the efforts of the Development Group were of benefit to the estate. The only aspect remaining open is whether the Commission's findings support its conclusion.

■ We shall not rehearse the history of the reorganization in detail. Suffice it to say that the Commission adopted the examiner's finding that the efforts of the Group blocked the 1954 plan. That plan would have given the B & P stockholders New Haven debentures valued at $103 for each share of B & P stock.

The plan ultimately adopted called for payment of $110 in cash plus a certificate of contingent beneficial interest (CCBI) representing one forty-thousandth of the net proceeds of any windfall resulting from the disposition of B & P assets through 1978. The position of the Development Group throughout its participation in this proceeding has been that the assets of the B & P were undervalued. The Commission adopted the finding that, but for the Group's insistence, the principle of the CCBI would not have been adopted in the 1966 plan. If the assets are in fact undervalued, a matter which the Commission can judge better than this court, the inclusion of the CCBIs might well produce significant gains for B & P stockholders. Consequently, we think that the Commission, particularly in light of its expertise in these matters, was justified in concluding that efforts of the Development Group were of benefit to the estate. Moreover, it might also well be that the Commission and the court could have concluded that, irritating as the presence of the Development Group might have been, it had served a constructive gadfly purpose in insuring that all possible courses of action which would benefit the estate were explored and that all feasible steps had been taken.

The points left open in No. 7597 are Attorney Hyman's contentions that legislative efforts and attempts to develop the value of B & P assets are compensable, contrary to the Commission's rulings. He also maintains that the reduction of allowances to the Development Group

---

3. 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934).

4. This disposes of most of the claims made by the trustee and Attorney Hyman. The trustee's argument that the district court could make no allowances without an affirmative showing that the Commission's report was supported by substantial evidence is without merit. Moreover, its contentions that the allowances were excessive because much of the service rendered by the Development Group petitioners was legislative or duplicative of efforts by the stockholders' committee

must fail. The Commission accepted the validity of the trustee's position as a matter of law. Therefore, the only remaining question is whether the evidence supports the amounts of the allowances fixed, which is plainly foreclosed. Attorney Hyman argues, assuming the validity of the Commission's rulings on the compensability of legislative and development efforts, that his allowance was fixed at an inadequate level, as he did not devote enough time to such activities to warrant the reduction in his petition. This position is also foreclosed.

petitioners because they were not a protective committee under § 77(p) is error and that the Commission's decision does not comply with 5 U.S.C. § 557(c) (3) (A) (Supp. V, 1970).

We need make no determination with regard to the compensability of the Group's promotional activities. Attorney Hyman made no claim for compensation for such efforts. He now raises the point on the theory that the Commission must have disallowed part of his petition on those grounds, as his petition included only a small claim for legislative efforts. The difficulty with his position is that the examiner found, contrary to appellant's petition, that his "primary function, apparently, was in connection with legislation." It therefore disallowed the bulk of his petition not by finding that appellant engaged in non-compensable promotional work, but by concluding that his legislative efforts occupied a greater proportion of his time than claimed in the petition. There is no indication that the action on appellant's petition was premised on a finding that he engaged in promotional efforts. Therefore, any error the Commission may have made in holding promotional efforts to be non-compensable did not affect appellant's allowance and we need not consider the point.

The contentions concerning the compensability of legislative efforts and the reduction of compensation to the Group petitioners due to the limited interests they represented must be placed in context. Congress brought the Commission into the allowance-setting process in an attempt to correct widespread abuses in connection with the allowance of legal expenses in railroad reorganizations. 5 Collier on Bankruptcy ¶77.28,

at 591 (1969). It has major responsibility in the administration of a rather broad statute and, in the light of its considerable expertise in this area, its conclusions as to proper subjects of compensation are to be given great weight by the courts. *See* Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); Gillentine v. McKeand, 426 F.2d 717 (1st Cir. 1970).

With the foregoing in mind, we think the contention that services in connection with legislation are compensable is entirely without merit. It has long been the position of the Commission that such activities do not have sufficient "connection with the proceedings and plan" to warrant recompense out of the debtor's estate. Wisconsin Central Ry. Reorganization, 295 I.C.C. 169, 172–73 (1956); Missouri Pacific R.R. Reorganization, 244 I.C.C. 69, 80–81 (1941); Chicago & Eastern Illinois Ry. Reorganization, 233 I.C.C. 267, 279 (1939); Chicago Great Western R.R. Reorganization, 233 I.C.C. 737, 744–45 (1939). This policy has been accepted by the courts [5] and we see no reason to depart from it.

The reduction of allowances of the Development Group petitioners because they were not a protective committee authorized under § 77(p) arose out of the issue of duplication of efforts by the Group and the authorized stockholders' committee. The examiner held that each made a contribution to the plan and that, to the extent that their efforts were duplicative, the allowances of each should be reduced. The Commission increased the allowance to the members of the stockholders' committee and counsel for the trustee. 331 I.C.C. at 622–23.[6]

5. In re New York, N. H. & H. R. R., 46 F.Supp. 214, 224 (D.Conn.), mod. on other grounds, Warren v. Palmer, 132 F.2d 665 (2d Cir.), aff'd on other grounds, Connecticut Ry. & Lighting Co. v. Palmer, 132 F.2d 670 (2d Cir. 1942).

6. The Commission found fault with the examiner's conclusion that the cost of duplicative services should be charged

against both the Group and the § 77(p) stockholders' committee and increased the allowances of the latter. It did not reduce further the Group petitioners' allowances. Accordingly, the net effect of both actions is that the committee's compensation was unaffected by duplication, while the Group petitioners' was reduced by part of the cost of duplication.

It is Attorney Hyman's position that the Development Group petitioners should not receive less compensation because of the limited interests they represent. The necessary concomitant of that position, however, is that the debtor's estate should be charged with the full cost of all services by any group representing stockholder interests, whether under § 77(p) or not, and irrespective of any duplication of efforts.

■ We cannot accept the notion that the estate should be charged for all duplicative services in these circumstances. The Act provides that "reasonable expenses * * * incurred in connection with the proceedings" are allowable. "Reasonable expenses" has, in large measure, come to mean expenses for services beneficial to the estate. See, e. g., Warren v. Palmer, supra n. 5, 132 F.2d at 668. And the Commission's position has been that duplication of effort is not beneficial, and therefore non-compensable. See Long Island R.R. Reorganization, 295 I.C.C. 208, 214–15 (1955); Boston Terminal Co. Reorganization, 290 I.C.C. 149 (1953). Whatever may justify another course in other circumstances, we agree with the Commission that a group representing limited interests which duplicates the work of an authorized committee working on behalf of all stockholders cannot expect compensation for such efforts. See In re Paramount Publix, Inc., 85 F.2d 588 (2d Cir. 1936), cert. denied, Palmer v. Paramount Pictures, Inc., 300 U.S. 655, 57 S.Ct. 432, 81 L.Ed. 865 (1937).

■ The contention that the Commission's decision does not meet the standard set by § 8(b) of the Administrative Procedure Act, as amended, 5 U.S.C. § 557(c) ˙(3) (A) (Supp. V, 1970), rests solely on its alleged failure to state explicitly whether it arrived at the maximum allowance by disallowing a substantial number of the hours claimed by the petition or by reducing the rate of compensation beneath that requested. We think it is without merit.

■ The purpose of § 8(b) is to provide courts with a basis for judicial review—with "an intelligible statement of the factors considered, issues decided and reasons supporting the * * * conclusions." City of Lawrence, Mass. v. CAB, 343 F.2d 583, 588 (1st Cir. 1965); see also Northeast Airlines v. CAB, 331 F.2d 579, 586 (1st Cir. 1964); cf. Baltimore & Ohio R.R. v. Aberdeen & Rockfish R.R., 393 U.S. 87, 92, 89 S.Ct. 280, 21 L.Ed.2d 219 (1968). Here the examiner found that Attorney Hyman's primary role was in connection with legislation, a non-compensable activity. We think it clear, therefore, that the reduction in the petition is attributable to the denial of compensation for a large block of the time claimed. While it is regrettable that the Commission did not make the basis of its computation more explicit, petitioner is in no way prejudiced. The finding is sufficiently clear to enable us to determine the factors which entered into the decision. And, as petitioner may not challenge the sufficiency of the evidence, there is no need for a more detailed finding.

Affirmed.

## MEMORANDUM AND ORDER

Attorney Hyman states to us that the Commission did not find that the majority of his time was spent on legislative matters, and that had it done so, it would have found him guilty of misrepresentation, or that, alternatively, we have done so. As we have said, such record as is before us is not at all clear. We do not intend to suggest any misrepresentation on the part of Mr. Hyman, or that either the Commission or we have so found. We merely say that whatever the basis of the Commission's findings, we see no sufficient reason to disturb them. The petition for rehearing is denied.