In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor.

In re Application for Authorization to Acquire Assets of the **BOSTON AND PROVIDENCE RAILROAD CORPORATION.**

No. 70–347.

United States District Court,
E. D. Pennsylvania.

April 2, 1971.

See also D.C., 325 F.Supp. 302.

Marvin Comisky, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., Sp. Counsel to the Trustees of the Debtor.

Morris Raker, Sullivan & Worcester, Boston, Mass., for the Trustee of the New York, New Haven and Hartford Railroad.

Walter H. Brown, Willkie, Farr & Gallagher, New York City, for the Institutional Investors Penn Central Group.

Morris Cheston, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for the Girard Trust Bank.

William Nelson, U. S. Dept. of Justice, Washington, D. C., for the United States of America.

Armistead B. Rood, Washington, D. C., for the Boston and Providence Railroad Stockholders Development Group.

## OPINION

FULLAM, District Judge.

The Trustees have petitioned the Court for authorization to expend substantial sums of money and to incur certain obligations in order to purchase the fixed assets of the Boston & Providence Railroad Corporation, in implementation of a plan for the reorganization of that railroad. The proposed purchase would require the Trustees to make immediate cash payments totalling $2,810,000, and to incur indebtedness to the United States in the aggregate sum of $1,925,000, with interest at 4½%, payable in annual instalments over a period of seven years. In exchange, the Trustees would acquire title to properties having a net "liquidation value" of at least $8,100,000, subject to the proviso that, with respect to any sales of such property for prices in excess of $500,000 which may occur on or before December 31, 1978, 51.9% of the net proceeds from such sales would be payable to the public shareholders of the Boston & Providence, while the remaining 48.1% would be retained by the Trustees, to be applied initially toward the liquidation of the government obligation mentioned above.

At first blush, two somewhat conflicting considerations emerge: (1) that, as an abstract proposition, the proposed transaction seems like a sound business investment; and (2) that, in the absence of other compelling factors, Trustees of a railroad in the financial straits of the Penn Central should not be per-

mitted to invest needed cash in speculative business ventures, however attractive.

At this point, it becomes necessary to review the historical background for an understanding of the complex relationships which bear upon the ultimate disposition of the present application.

The Boston & Providence owns about 200 miles of track, including principally the 44-mile segment of main line between the cities of Boston, Massachusetts, and Providence, Rhode Island. It has not conducted railroad operations as such since 1888. In 1893, a predecessor to the New York, New Haven & Hartford Railroad (hereinafter "New Haven") leased the Boston & Providence property under a long-term lease, and from that year, the trackage in question has constituted an integral part of the New Haven system. In 1935, the New Haven encountered financial difficulties and went into reorganization under § 77 of the Bankruptcy Act. Thereafter, in 1938, in the course of those proceedings, the New Haven rejected the Boston & Providence lease. From July 19, 1938, to the present time, the New Haven or its successors have operated the properties for the account of Boston & Providence under the provisions of § 77(c) (6) of the Bankruptcy Act, pursuant to a court order in the New Haven reorganization proceedings.

The rejection of the lease by the New Haven precipitated the bankruptcy of the Boston & Providence, which went into reorganization under § 77 on August 4, 1938. The Boston & Providence has been in reorganization ever since.

Numerous proposed plans of reorganization of the Boston & Providence have been under consideration by the courts and the ICC over the years. What finally resulted was a plan [1] whereby the New Haven would acquire the Boston & Providence assets on the terms and conditions set forth above.[2]

When the Pennsylvania Railroad merged with the New York Central, as of December 31, 1968, one of the conditions of the approval of the merger was the assumption by the merged corporation (now represented by the Debtor) of the obligations of the New Haven under the Boston & Providence reorganization plan. And among the New Haven assets acquired by the Debtor as a result of the merger were shares of stock in the Boston & Providence. At the present time, the Trustees, directly and indirectly, are the holders of 15,918 shares (43%) of the 36,688 outstanding Boston & Providence shares.

Among the obligations of the Boston & Providence were certain debentures owing to the New Haven, aggregating approximately $5 million. The New Haven pledged these debentures with the United States government as security for certain "flood loans" granted the New Haven by the government. These loans were defaulted, and the United States government now is the beneficial owner of the debentures. In the course of the Boston & Providence reorganization proceedings, it was contended by some of the interested parties that these debentures were no longer valid, on the theory that, when the New Haven acquired them, a merger of the obligation was effected as a matter of law. However, this contention has always been stoutly resisted by the New Haven and by the United States government. In the final reorganization plan of the Boston & Providence, this dispute has been

1. For a history of the present plan ("the 1966 plan"), see In re Boston & Providence Railroad Corporation, 260 F.Supp. 415 (D.C.Mass.1966), aff'd 413 F.2d 137 (1st Cir. 1969). The earlier history is reviewed in detail in Freeman v. Mulcahy, 250 F.2d 463 (1st Cir. 1957).

2. The New Haven emerged from reorganization in 1947, but again went into reorganization in 1963. As finally formulated, the Boston & Providence reorganization involves the acquisition of these assets by the New Haven Trustee, with the approval of the New Haven reorganization court. The New Haven Trustee is apparently willing to consummate the plan, but is also willing to have the Trustees do it. The present proposal has been approved by the New Haven reorganization court (Order No. 634, entered February 16, 1971).

compromised, and the government has agreed to accept new debentures in the face amount of $2,200,000,[3] bearing interest at 4½%, instead of the 5½% provided in the original debentures.

It thus appears that, if the reorganization plan of the Boston & Providence is not carried out, the government would be in a position to reassert its claim on the $5 million in debentures, with interest thereon at 5½%; if this claim proved valid, it is obvious that the interests of all of the Boston & Providence shareholders, including the Trustees, would be wiped out.

Another important consideration is the fact that the Boston & Providence trackage is an integral and vital part of the rail system of the Debtor. It constitutes not only the sole rail access available to the Debtor between Boston and Providence, but also forms part of the best route between Boston and New York.[4] While the ultimate outcome of possible alternative methods of acquiring these trackage rights is necessarily conjectural, it seems clear, at least, that outright ownership could not likely be acquired on more advantageous terms than those presently proposed. Cf. New Haven Inclusion Cases, 399 U.S. 392, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970).

One of the key assumptions underlying the final reorganization plan of the Boston & Providence has been the notion that its assets include real estate holdings, not necessary in the rail operations, which, if properly handled, can be disposed of for very substantial sums of money. The plan includes appropriate mechanisms for attempting to convert these predictions into reality. I express no view as to the accuracy of these predictions, but will merely note that if the Trustees are permitted to carry out the

reorganization plan, they will be in a position, as shareholders, to reap their appropriate share of any such benefits; whereas, if they are not permitted to carry out the plan, there is a strong likelihood that their equity would be obliterated.

It should be emphasized that approval of the pending petition would not amount to a holding that the Trustees must necessarily carry out all of the obligations imposed as conditions for approval of the merger between the New York Central and the Pennsylvania Railroad. It is fair to state that no one can now confidently forecast the possible consequences and legal ramifications of a rejection by the Trustees of the executory aspects of any of the merger obligations. But it is indeed understandable that the Trustees would prefer to avoid, for the present, the massive litigation that would presumably be involved before a definitive adjudication of respective rights and obligations could be achieved. At the very least, it makes sense to refrain from reaching such issues in order to withdraw from a transaction which, on balance, appears likely to have very favorable results for the Debtor's estate.

What has been discussed thus far disposes of the issues raised in the answers filed by the institutional investors and certain indenture trustees. Additional objections were expressed informally at the hearing by an attorney named Armistead B. Rood, Esq. who represented a few minority shareholders of the Boston & Providence, under the designation "Boston & Providence Railroad Shareholders Development Group", throughout most of the Boston & Providence litigation.[5] At the hearing in this matter, Mr. Rood purported to represent

---

3. The first annual instalment, $275,000, would be payable immediately, leaving a balance of $1,925,000.

4. It is significant that all of the proposed plans for reorganizing the Boston & Providence which have been seriously considered involved acquisition of these properties by the New Haven.

5. Since being permitted to intervene, in 1954, these interests have demonstrated considerable enthusiasm for litigation, including some actions deemed so vexatious and oppressive that counsel fees were awarded against them. *See* Freeman v. Mulcahy, 250 F.2d 463, 471 (footnote 7).

that group and also a bondholder of the former New York Central Railroad Company. Mr. Rood's contention that the Trustees could not legally use the proceeds from loans guaranteed under the provisions of the Emergency Rail Services Act of 1970 in order to make payments in connection with the proposed transaction requires little comment. In the first place, the precise origin of the funds to be used by the Trustees for this purpose was not at issue at the hearing. And in the second place, the Department of Justice, on behalf of the Federal Railroad Administration, appeared at the hearing in support of the Trustees' application, and confirmed of record that the government has no objection to the use of loan proceeds for this purpose. Moreover, it seems clear that a bondholder would have no standing to raise such an issue.

The only remaining arguments raised by Mr. Rood amount to an attempted collateral attack upon the merits of the Boston & Providence reorganization plan, which has been finally adjudicated. In the Matter of Boston & Providence Railroad Corp., 413 F.2d 137 (1st Cir. 1969). All of these contentions were duly considered and rejected in those proceedings; obviously this Court has no jurisdiction to consider them. While Mr. Rood was permitted, as a matter of courtesy, to express his views, he had not previously sought to intervene, and to the extent that his informal appearance might be deemed an application to intervene, it was and is denied. Neither Mr. Rood nor his purported clients are parties to this case.

It should be mentioned, finally, that the enthusiastic support of the Trustees' application by the United States Department of Justice, on behalf of the United States and the affected Federal agencies, carries a great weight. On balance, I am satisfied that this Court should accede to the considered business judgment of the Trustees in this matter. The petition will be granted.