**In re BOSTON & PROVIDENCE RAILROAD CORPORATION.**
**In re BOSTON & PROVIDENCE RAILROAD DEVELOPMENT GROUP, et al., Appellants.**
**No. 74–1159.**

United States Court of Appeals, First Circuit.

Argued June 5, 1974.

Decided July 17, 1974.

Charles R. Nesson, Cambridge, Mass., with whom Harvey A. Silverglate, Thomas G. Shapiro, and Silverglate, Shapiro & Gertner, Boston, Mass., were on memorandum, for appellants.

Arthur P. Schmidt, Boston, Mass., with whom Gaston, Snow & Ely Bartlett, Boston, Mass., was on memorandum for National Shawmut Bank of Boston, Charge Trustee, appellee.

Alan L. Lefkowitz, Boston, Mass.. John L. Davidson, Jr., and Greenfield, Davidson & Mandelstamm, St. Louis, Mo., on memorandum for Dumaines, appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant seeks to prevent the distribution of funds held by the National Shawmut Bank as Charge Trustee, under an Indenture executed pursuant to the plan of reorganization (Plan) for the Boston and Providence Railway Corporation (B&P). The Indenture imposed upon all B&P real estate an equitable charge for the benefit of holders of Certificates of Contingent Beneficiary Interest (CCBI's), issued pursuant to the Plan. By preventing the distribution, appellant hopes to reach funds remaining from the recent sale of certain former B&P real estate by the Reorganization Trustees of the Penn Central Transportation Company to the Commonwealth of Massachusetts and the Massachusetts Bay Transport Authority, to the extent that the Debtor's Expense Fund of approximately $600,000, established by the Plan, is insufficient to meet appellant's claims for compensation and expenses.

The district court denied and dismissed appellant's motion for a prelimi-

nary injunction against the distribution of funds by the Charge Trustee, and permanently enjoined him from interfering with the Charge Trustee's receipt and distribution of the proceeds of the sale of the real estate. The district court also assessed attorney's fees against appellant, for his "vexatious and groundless motion". Appellant has moved for summary reversal and vacation of the judgment. The Charge Trustee and Dumaines, a voluntary association holding a large number of CCBI's, have moved for affirmance and summary dismissal.

The district court's denial of appellant's motion for a preliminary injunction was based both upon a determination that appellant was unlikely to prevail on the merits of his claim for compensation and expenses, above and beyond the amount held in the expense fund by the B&P Trustees, and upon a balancing of harms.

Appellant, having been paid $90,000 for his services in connection with the Plan covering the years 1954–1966, has submitted two additional claims, one for $150,000 for the years 1966–1971 and a claim for $453,000, based on the "success factor" of his effort to obtain inclusion in the Plan of the CCBI's—which, reflecting the appreciating value of B&P's real estate, have multiplied severalfold in value. This claim relates to services performed before 1966. A third type of claim, urged before us but not in the district court, is that for promotional services in the nature of trying to bring about a sale of some of B&P's real estate to the Commonwealth of Massachusetts and the Massachusetts Bay Transportation Authority, which sale occurred in 1973, in the sum of $12,000,000.[1] Appellant characterizes this as an equitable charge within the principle of Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

This claim is not liquidated in amount and, insofar as it relates to services performed between 1966 and 1971, is apparently a component of the $150,000 claim. To the extent that there is a claim for such services post-1971, the record before us is silent.

In any case, since appellant's liquidated claims alone exceed the Debtor's Expense Fund, and other expenses are also being paid from the Fund, appellant seeks to hold up final distribution by the Charge Trustee of the $682,909 until his claims are finally adjudicated. It is the position of the Charge Trustee, Dumaines, and the Penn Central Trustees that appellant lacks a valid claim but that even if he had one, he could look only to the Debtor's Expense Fund.

We deal with the latter contention first. We see no need to delve back into this thirty-five year old litigation beyond our prior opinion on appeal from confirmation of the Plan, In the Matter of Boston & Providence R. Corp., 413 F. 2d 137 (1969). When we were considering that appeal, there was some doubt whether the Plan's provision of $550,000 for expenses of reorganization was to cover all expenses, past and future. Since the Interstate Commerce Commission (Commission) had already approved over $500,000 in allowances for the period ending June 30, 1966, the problem of adequacy of the Fund was real. We requested comment from the Commission and noted in our opinion that the Commission had "ruled that the pertinent section of the plan does not impose a maximum limit on the amount of the administration claims but governs the amount to be kept available at the time of consummation of the plan." 413 F.2d at 140.

In other words, claims already approved would not be charged to the Fund, and the full $550,000 would be available for all future allowances. Ap-

---

1. After the closing, $10,500,000 was distributed to the CCBI holders by Penn Central Trustees, who had succeeded the B&P Trustee in the title to the real estate. After deducting allowable expenses, the sum of $682,909.27 was paid the Charge Trustee. It is this sum which is the object of appellant's injunctive efforts.

pellant views our language differently, concluding that, in his words, the Fund would be "unlimited". By this we understand him to mean that the Fund would be replenished after paying each future allowance so that it would be kept at a $550,000 figure until the last fee was paid. We have difficulty in seeing how the limiting words "at the time of consummation" can be reconciled with openendness.[2] If, however, there was room left for doubt by our language, we see no room whatsoever after the district court's unappealed "Consummation Order and Final Decree", dated February 23, 1971, which directed, in Section V, that $550,000 be set aside for claims not paid prior to consummation, and reserved jurisdiction to make allowances of compensation for services "heretofore or hereafter rendered . . . out of said fund of $550,000." The date of consummation was April 20, 1971. Appellant, in asserting the legitimacy of his claim to go beyond the Fund, has not mentioned in his brief or affidavits the significance of this provision.

This leaves appellant's theory, if not yet a claim, of an equitable charge for promotional services, for the years 1966–1971 to the extent left open by the Commission for pursuit elsewhere than against the Debtor's Expense Fund, and for the years subsequent to 1971. While *Ticonic, supra*, did recognize the merit of awarding legal fees for counsel whose efforts benefitted others than his client, it was dealing with the familiar field of litigation. What obstacles there may be for one who, though a lawyer, claims compensation for unbargained for promotional services of the kind alluded to by appellant we do not know. We are not at this juncture so confident that we can say that he has demonstrated a probability of success.

■ The district court, therefore, was clearly within its discretion in deeming that appellant had shown little likelihood of success in establishing a claim to assets in the hands of the Charge Trustee, should the Debtor's Expense Fund be found insufficient for claims chargeable to it. Another aspect of "success on the merits" is the substantiality of appellant's claims themselves, which we now address briefly.

■ The $150,000 claim for services rendered between 1966 and 1971 was denied by the Commission on February 4, 1974 (Finance Docket No. 12131, Served February 28, 1974), with the comment that appellant's efforts for the 1966–1971 period had "failed to produce any definable benefit to the estate". (Slip op. p. 871.) Appellant's objections to this report are yet to be heard by the district court, but, in the face of an adverse Commission report, he cannot be said to have demonstrated a probability of success. Even if he were successful, however, the Debtor's Expense Fund could honor this claim.

The $453,000 claim for pre-July 1, 1966 services attributable to the "success factor" was denied by the Commission on October 5, 1973 (Finance Docket No. 12131, Served October 16, 1973). The Commission stated (slip op. p. 2): "[W]e are convinced that the maximum limit of the final allowance for the services performed before July 1, 1966, constitutes reasonable compensation for all services rendered and particularly for the contribution of the Development Group counsel [including appellant] to the formulation and adoption of the concept of CCBI in the B&P reorganization

2. By the same token, we have equal difficulty in understanding the Charge Trustee's argument that our language should be discarded as "obiter dicta". The appellees in the 1969 appeal had interpreted the Plan in substantially the same way as did we, i.e., "The fund of $550,000[,] which will not be created until consummation, is not to be charged with allowances paid prior thereto." The Charge Trustee, appointed in 1971, may not have known of this background, but subsequent hearings evidenced the understanding of the B&P Trustees and others that indeed our opinion, dicta or not, had expanded the availability of the Fund for fees and expense reimbursement, although not to the extent claimed by appellant.

plan."[3] Appellant has moved for reconsideration of this order, but so we have been informed by counsel since argument before us, the motion has since been denied on June 6, 1974. Again, we cannot say the district court abused its discretion in concluding that appellant had not shown a probability of success.

■ Nor can we say that the district court abused its discretion in concluding that the alleged harm to appellant will exceed the harm to CCBI holders if injunctive relief were denied. Appellant maintains that distribution of the net undistributed proceeds from the sale of the B&P real estate would make it difficult for him to recover any valid claims which exceeded the expense fund, and that, in the alternative, the B&P shareholders would suffer no irreparable harm if distribtuion were enjoined pending the outcome of his claims. But, as we have noted, assuming appellant's claims were strong ones, there remains a balance in the Debtor's Expense Fund, and remaining B&P real estate yet to be sold. Under the circumstances, the inconvenience of pursuing distributed funds, rather than funds as yet undistributed by the Charge Trustee, is not necessarily a harm sufficiently "irreparable" to warrant relief. Withholding distribution until all of appellant's claims could be put to rest (within a controversy that has, in broadest outline, already dragged on for over thirty-five years) may well be a prospect sufficiently harmful that it outweighs any inconvenience which might fall upon appellant. Again, we find that it was well within the discretion of the district court to balance the harms in this manner.

■ Our judgment with regard to the district court's order barring appellant from pursuing claims against the Charge Trustee is guided by the same criteria. Appellant argues that this order "effectively forecloses" his ability to collect any fee which might ultimately be awarded by the court, but he neglects to indicate precisely why the order has such a drastic result. It might well be "logical" for the Charge Trustee to pay the fee, as appellant later states. It may also be true that, once distribution is made, appellant can no longer be "assured" that all of his fees will be collectible. But it seems clear that distribution would not, of itself, moot the case, since appellant is not prevented from pursuing the distributed proceeds. Again, the balance of harms is not so clearly on the side of appellant that the court abused its discretion by enjoining appellant from interfering with the Charge Trustee's receipt and distribution, under the Indenture of the proceeds of the former B&P real estate.[4]

■■ We turn now to the district court's action in awarding $13,669.79 in attorney's fees and expenses in defending against appellant's efforts to obtain injunctive relief. Such a sanction should be imposed only when a party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). We are all too aware of the harvest of exacerbation which hoary litigation reaps. We are aware also of the district court having restrained itself from awarding fees in 1968. And we have carefully reviewed the affidavits of former counsel for appellant, reputable and respected attorneys, who advised appellant as to this last bout. But we are one step removed from the stress of this litigation. We would find abuse of discretion only if we saw no reasonable ground on which

---

3. The Commission, in appellant's claim for compensation for services prior to July 1, 1966, had increased the allowance from the $70,000 recommended by the Hearing Examiner, to $90,000.

4. What we have held disposes of the motion of Joseph B. Hyman to join in appellant's motion to show cause and the Development Groups adoption of appellant's motion nunc pro tunc, both submitted after the court's decision of January 25, 1974. We construe the district court to have denied both such attempts to intervene. Our disposition of appellant's claims, identical with theirs, renders harmless the denial of intervention.

the court could rest a finding of vexatiousness. We cannot so find, not solely because of the wording in our own prior opinion, but more particularly because of the clear import of the Consummation Order and Final Decree.

Our concern increases, however, as we view the amounts of the several awards. The district court on January 25, 1974 directed counsel to submit an estimate of "costs". Three affidavits were submitted. One was from counsel for the Dumaines, reporting 68 hours of time for two partners and an associate and $794.30 in expenses. No allocation of time at the varying rates applicable to senior counsel, a partner, and an associate was made. The court awarded only the amount noted as expenses. A second affidavit was received from special counsel to the Penn Central Trustees, giving no estimate of time but requesting a fee of $3,325 and expenses of $149.77. The court awarded $3,474.74. A third affidavit was filed by counsel for the Charge Trustee, requesting that any payment be made to the Penn Central Trustees, who were obligated to pay the expenses of the Charge Trustee. This affidavit reported the services of the senior partners, two partners, two associates, with assistance from one or more para-legal employees for 260.50 hours of lawyers' time, amounting to a bill of $13,200 for services and $195.05 for reimbursement of expenses. The court awarded $10,195.05.

We may overlook the discrepancy between the court's original call for "costs" since its allowance of some fees may be said to indicate its intent. But each application may be subjected to particular comments, the sum total of which gives us pause. That of Dumaines gave no basis for a computation of fee, resulting only in an award for expenses, leaving 68 claimed hours, at varying rates, uncompensated. That for the special counsel of Penn Central gave no indication of time spent, although, we observe, its brief before the district court was the most helpful in our review. That for the Charge Trustee was

facially sufficient. Our only problem is that, as we have already noted, its brief (both here and in the district court) was not helpful on the fee ceiling issue and we cannot comprehend the use to which the equivalent of six or seven weeks' work for a lawyer was put. Appellant has a point: if his claims were so frivolous, why all the fuss?

We see no way in which we can properly restructure the situation. If fees are to be awarded, the total should be a fraction of the total allowed below, with more detailed analysis of time invested as compared with helpfulness to the court. We affirm the award as to expenses in all cases and leave the future determination of fees, if applications therefor are submitted within thirty days following issue of mandate, to the district court.

*Affirmed under local rule 12 except as to the award of counsel fees, as to which the case is remanded for further proceedings in accordance with this opinion.*